THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HARRIET MAE RALLS, Defendant-Appellant.

(No. 74-78;

Fifth District—October 15, 1974.

Joseph R. Bartylak, of Land of Lincoln Legal Assistance Foundation, Inc., of Alton (Helen D. Moorman, of counsel), for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Edward C. Ferguson, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

The Alton police answered a call from the defendant's landlady at 3 A.M. on January 25, 1974. They took the defendant into custody and detained her at the police station until 4 P.M. when Dr. Edward Mulvill conducted an examination. Dr. Mulvill completed a certificate attached to a petition which had been filled out by Billy Lawrence of the Alton Police Department. The petition in the Circuit Court of Madison County was for hospitalization, alleging that the defendant was a person in need of mental treatment as defined in section 1—11 of the Mental Health Code. The defendant was taken to the Alton State Hospital the same day immediately following the examination as an emergency admission.

On January 30, 1974, defendant was served with a notice of hearing concerning her mental health which was set for January 31, 1974. The hearing was held on January 31. Defendant was represented by appointed counsel and no relatives or witnesses on defendant's behalf were

notified or appeared. Dr. Marta Saenz, a physician on the staff of the hospital, testified for the State, and the defendant testified. Dr. Saenz recommended that the defendant continue to be hospitalized because she was unable to take care of herself. When questioned by the court, Dr. Mulvill and a Dr. O'Neill, another examining doctor, joined Dr. Saenz in her conclusion. The court found the defendant in need of treatment and without any inquiry into alternate treatment or placing her in custody of relatives ordered her hospitalized by the Department of Mental Health in one of its hospitals.

The defendant has appealed from the order of the Circuit Court of Madison County and bases her appeal on three points: (1) the petition for hospitalization and the attached doctor's certificate did not justify the emergency hospitalization; (2) the evidence at the hearing does not support the finding that the appellant was "a person in need of mental treatment"; and (3) the court erred in failing to consider any alternative form of care or treatment for the defendant.

We believe that the defendant was not properly hospitalized for emergency treatment.

The certificate of need for hospitalization which was signed by Dr. Mulvill did not clearly state the facts upon which his opinion was based. When asked to state a conclusion about the defendant, the doctor wrote "unable to care for herself or harmful." In response to a question on the certificate asking the doctor to describe the specific acts of the defendant, the doctor wrote "bizarre behavior." The doctor wrote "see police report" as the source of his information for the acts. Thus it appears that the doctor relied upon information supplied by the police officers in reaching his conclusion. In determining whether the defendant was properly hospitalized as an emergency, therefore, the only specific acts of the defendant which are known to this court and which lead to the hospitalization are that the defendant asked several men to light her gas oven because she was cold and that she told police officers that she could "see cold."

The emergency admission provision of the Mental Health Code is very clear in requiring that a person be "in need of mental treatment and in such a condition that immediate hospitalization is necessary for the protection from physical harm of such person and others." (Ill. Rev. Stat., ch. 91½, par. 7—1.) Emergency admission to a mental hospital is an extreme step and it should not be invoked except in true emergencies. A "person in need of mental treatment" is defined as "any person afflicted with a mental disorder, not including a person who is mentally retarded, as defined in this Act, if that person, as a result of such mental disorder, is reasonably expected at the time the determination is being made or

within a reasonable time thereafter to intentionally or unintentionally physically injure himself or other persons, or is unable to care for himself so as to guard himself from physical injury or to provide for his own physical needs." (Ill. Rev. Stat., ch. 91½, par. 1—11.) The defendant was not properly hospitalized as an emergency, therefore, unless the facts known at the time of the hospitalization support the conclusion that the defendant was in need of mental treatment *and* was "in such condition that immediate hospitalization is necessary for the protection from physical harm of such person or others  \*  \*  \*." Ill. Rev. Stat., ch. 91½, par. 7—1.

■■ The defendant's statement that she could "see cold" was not sufficient to justify a conclusion that hospitalization was needed to prevent physical harm to the defendant or some other person. It has been held that the mere establishment of a mental problem is not an adequate basis upon which to confine a person who has never harmed or attempted to harm either himself or another. (*People v. Sansone,* 18 Ill.App.3d 315, 309, N.E.2d 733.) In the instant case, the petition and the accompanying certificate demonstrated, at the most, that the defendant may have had some type of mental problem. The mental problem was not described and there were no known facts leading to the conclusion that the defendant's continued freedom created a danger of physical harm to herself or others.

■■ "In the area of mental health law the State must balance the curtailment of liberty against the danger of harm to the individual or others." (*People v. Sansone, supra,* at 323.) Section 7—1 was intended to provide a degree of protection to an individual's liberty if that individual is alleged to be mentally retarded or in need of mental treatment. That protection is afforded by the requirement that the petition to hospitalize a person be accompanied by a physican's certificate which contains the reasons for the physician's conclusion. This court interprets the word "reasons" to mean that *specific* reasons must be listed on the certificate. Such an interpretation will provide a greater degree of protection to the liberty of a person alleged to be mentally retarded or in need of mental treatment. This amount of protection to individual liberty seems especially important in light of the fact that any person 18 years of age or older may present a petition to hospitalize an individual for emergency mental treatment. The possibility that the emergency procedure would be abused is great unless the word "reasons" as used in section 7—1 is interpreted as suggested above. The legislature intended that the person could be hospitalized for emergency mental treatment against his will only on the basis of a petition and an *independent* examination of a physician. An examination is not independent, of course, if the physician

relies on statements made by the petitioner about the person sought to be hospitalized. If the examining physician is not required to specifically state his reasons for recommending hospitalization, the risk is greatly increased that the doctor will rely on the petitioner's statements rather than upon a complete and independent examination. Allowing that risk to be increased is inconsistent with the legislative intent of section 7—1 and with the requirement to protect individual liberty. The physician's certificate in the instant case failed to state adequate reasons for the doctor's conclusion and the defendant was not properly hospitalized.

No case has been found in which it was held that a person was improperly hospitalized for emergency mental treatment. However, if it were correctly determined at the subsequent hearing that the defendant was a person in need of mental treatment, it would not be in the best interest of society or of the defendant to reverse the court's decision on the grounds that the original emergency hospitalization was improper.

The defendant contends that the evidence presented at the hearing does not justify the conclusion that the defendant is a person in need of mental treatment. According to the definition of a person in need of mental treatment, the State has the burden to prove that the defendant was reasonably expected to physically injure herself or others or that the defendant is unable to care for herself so as to guard herself from physical injury or to provide for her own physical needs. (Ill. Rev. Stat., ch. 91½, sec. 1—11.) The defendant claims that the State proved only that the defendant may be unable to care for herself in the future.

It has been held that in a proceeding to hospitalize a person for mental treatment against his will, the State has the burden to prove that the individual is in need of mental treatment by clear and convincing evidence. That burden is greater than the burden to prove by a preponderance of the evidence but lesser than the burden to prove beyond a reasonable doubt. The State must show more than that the individual suffers from a mental illness and must prove that, because of a mental problem, the individual is expected to injure himself or another or that the individual is unable to care for himself so as to guard himself from physical injury or to provide for his own physical needs. *People v. Sansone, supra.*

The problem was well put in *People v. Sansone, supra.*: "Where the issue involved is not the occurrence of an event, but the determination of an individual's mental condition, the State must prove that the individual is in need of mental treatment by clear and convincing evidence." (18 Ill.App.3d at 326.) Dr. Saenz, a physician at the Alton State Hospital, thoroughly examined the defendant. She testified that she diagnosed the defendant as a "chronic schizophrenia." She further stated

that the defendant was suffering from mental illness and that "she was unable to take care of herself." On cross-examination, Dr. Saenz re-affirmed her finding and brought out additional facts. The State called no other witnesses.

The defense counsel called the defendant. Although she answered most of the questions, her answers were far from concise and she did digress. Later defendant was cross-examined by Dr. O'Neill, one of the two doctors who had examined the defendant pursuant to an order of the court. While on the witness stand, the defendant would from time to time put certain questions to the people in the courtroom and the doctors. Frequently, she began rambling and made statements that made little sense.

■■ The record shows that the State did carry its burden in the instant case. The defendant in her brief states that the doctor testified that she may be unable to care for herself in the future. The medical testimony specifically indicated that the defendant could not care for herself. There was absolutely no substantial evidence rebutting the State's case.

■■ Section 9—6 of the Mental Health Code (Ill. Rev. Stat., ch. 91½, par. 9—6) provides alternative terms of treatment. The court was justified in finding that the defendant was in need of hospitalization, and therefore, it was not error for the court to fail to give consideration to placing the defendant with a relative.

The defendant was not properly hospitalized for emergency treatment, but that error does not require reversal for the reasons stated.

The judgment of the Circuit Court of Madison County is affirmed.

Judgment affirmed.

G. MORAN, P. J., and EBERSPACHER, J., concur.