*In re* LINDA DIETER.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* LINDA DIETER, Respondent-Appellant.)

First District (2nd Division)    No. 76-464

Opinion filed November 15, 1977.

8

James J. Doherty, Public Defender, of Chicago (Suzanne M. Xinos, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Iris E. Sholder, and William E. Spizzirri, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE PUSATERI delivered the opinion of the court:

This appeal arises from an order finding the respondent, Linda Dieter, in need of mental treatment and ordering her commitment to the Department of Mental Health, John Madden Center. Respondent contends on appeal that she was not proved to be in need of mental treatment since there was no factual basis for the diagnosis of mental illness or for a prediction of dangerousness.

The record discloses that petition for hospitalization and an attached certificate of need for hospitalization was filed on November 23, 1975, seeking the emergency admission of the respondent as a person in need of mental treatment under section 7—1 of the Mental Health Code (Ill. Rev. Stat. 1975, ch. 91½, par. 7—1). The certificate of hospitalization was filed by a licensed physician stating that the respondent appeared suicidal and withdrawn and that she had intentionally cut both wrists. Two further certificates of need for hospitalization were subsequently filed by licensed psychiatrists, also noting that respondent had cut her wrists.

Respondent waived her right to demand a jury. At the hearing, the State presented as its primary witness, Dr. Hector Munoz, a staff psychiatrist employed by the Illinois Department of Mental Health, who had practiced psychiatry for approximately seven years. He testified that he had had three psychiatric interviews with the respondent in which there was little communication by her; there were only a few times that she answered any questions verbally and she responded to some questions by nodding her head positively or negatively. The respondent told Dr. Munoz that she had a roommate and that she had been brought to the hospital against her will. She did not mention any of the precipitating facts or circumstances surrounding her hospitalization, but repeatedly

stated that she was all right, that she wanted to go home and that she planned on going back to work.

On the basis of these interviews, Dr. Munoz formulated an opinion that the respondent's judgment and awareness of her problem were impaired. He further testified that he did not know how the respondent's memory and thinking process were, but that "they looked like they were coherent and relevant to my questions." However, he added that her "kind of solemn attitude" made it difficult to relate to her in an adult way.

Dr. Munoz testified that the respondent had initially been admitted to a hospital for wrist wounds. According to the treating physician's report, these wounds were "superficial" and did not require stitches. Dr. Munoz did not personally observe these wounds since the respondent's wrists were covered by two dressings and handcuffs.

Dr. Munoz concluded that the respondent suffered from a depressive neurosis and recommended hospitalization. He also stated that he could not give the specific reasons for his opinion until the respondent answered more of his questions. When asked whether it was reasonable to assume that the respondent would reasonably be expected to intentionally or unintentionally harm herself if she were released, he replied "more likely than not," but he gave no specific facts or reasons for that opinion.

On cross-examination, Dr. Munoz testified that it was his understanding that the respondent had never previously been a patient in a mental hospital. He further stated that the respondent denied slashing her wrists, but offered no explanation concerning the cause of her wounds.

The State then called the respondent, Linda Dieter, as a witness pursuant to section 60 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 60). The respondent testified that she was 21 years old. She further testified that she was brought to Madden in an ambulance. Her girl friend had called the police because she thought the respondent was trying to kill herself. The respondent stated that she received the scratches on her wrists while playing with her cat(s); she didn't know why her girl friend got any other impression. Respondent further testified that her wrists did not bleed. There was no direct evidence presented to controvert the respondent's testimony.

The Mental Health Code (Ill. Rev. Stat. 1973, ch. 91½, par. 1—11), defines persons "in need of mental treatment" as:

> "* * * any person afflicted with a mental disorder * * * if that person, as a result of such mental disorder, is reasonably expected at the time the determination is being made or within a reasonable time thereafter to intentionally or unintentionally physically injure himself or other persons, or is unable to care for himself so as to guard himself from physical injury to provide for his own physical needs. * * *"

10

■ ■ ■ In determining the required standard of proof to commit an individual, our court has stated that it is impermissible for an individual to be committed upon "no higher standard of proof than applies in a negligence case." (*People v. Sansone* (1st Dist. 1974), 18 Ill. App. 3d 315, 326, 309 N.E.2d 733.) More recently our supreme court in *In re Stephenson* (1977), 67 Ill. 2d 544, 554-56, 367 N.E.2d 1273, reiterated that clear and convincing was the standard of proof further expounded upon the rationale underlying this standard wherein it stated:

> "\* \* \* More to the point, we believe, is an appraisal of the interests of the allegedly mentally ill individual and the society of which he is a part. Those interests are, in part, competing.
>
> The fundamental liberty interest of the person facing commitment is self-evident. The Mental Health Code \* \* \* reflects a concern for that interest and \* \* \* represents a serious attempt to provide beneficial treatment and care for the mentally ill with minimum ostracism and confinement consistent with protection of the public. Our free society's interest in prospectively protecting itself from dangerous or harmful conduct, standing alone, suffices to justify only minimal infringements upon an individual's personal liberty. \* \* \*
> \* \* \*
> \* \* \* we believe the appropriate standard of proof to be clear and convincing evidence. It is, in our opinion, compatible with the competing interests and is consistent with due process. It requires a high level of certainty before finding an individual in need of mental treatment and curtailing his liberty, but does not place an impossible burden on the State in proving its case."

A reading of the Mental Health Code together with *Sansone* and *Stephenson*, establishes that in order to adjudicate a person in need of mental treatment, the court must be presented with specific evidence which established: (1) that the respondent is suffering from a mental disorder and (2) that due to the disorder the respondent may injure him or herself or another, or the respondent is unable to care for him or herself. It is evident from an examination of previous case law that the case at bar failed to satisfy the above two-part standard by clear and convincing evidence.

In *People v. Bradley* (1st Dist. 1974), 22 Ill. App. 3d 1076, 1081-82, 318 N.E.2d 267, the examining doctor testified that the respondent was tense during the interview, kept his hands withdrawn and distant, would not discuss the hospitalization, would not cooperate, was suspicious, and would not respond about hallucinating experiences. Further, the respondent told the doctor he was unable to get a fair trial in America since his life style was "Anti-American, he was being 'railroaded,' was

concerned about the mistreatment of his family, and race, and all of the books written, all of the movies made," and when he got access to the communication media, he would let the world know his thoughts. This court reversed the respondent Bradley's commitment since it found that neither the facts upon which Dr. Rebic's medical opinion was based nor the medical opinion itself were clear and convincing.

A similar result was reached in the case of *In re Welch* (1st Dist. 1975), 28 Ill. App. 3d 716, 329 N.E.2d 286 (abstract), wherein the doctor testified that respondent told him she had had many nervous breakdowns, that she was an excessive drinker, and that she drank in order to pass out because she was miserable and depressed. The respondent told this doctor that he was seducing her by touching the phone when she called him; she would also wander into unsafe neighborhoods without comprehending the possibility of an attack upon her. Based upon this evidence, the doctor diagnosed the respondent as schizophrenic with paranoid trends. The court, in reversing the finding of further need of mental treatment, held that although the evidence established that respondent was suffering from a mental disorder, it did not clearly and convincingly show that she would injure herself or others or that she was unable to care for herself. Moreover, it has repeatedly been held that "a mere finding that respondent is afflicted with a mental disorder is an insufficient basis for concluding that a person may be hospitalized under the statute." *People v. Williams* (1st Dist. 1977), 47 Ill. App. 3d 861, 365 N.E.2d 404.

In contrast, Dr. Munoz presented far fewer facts and specifics in his testimony than did the doctors in *People v. Bradley*. Dr. Munoz stated that he interviewed the respondent, that she was silent for the most part, although she answered some of his questions. He further testified that he did not know how her memory or thinking process were, but that they appeared to be coherent and relevant to his questions. Although diagnosing that respondent had a depressive neurosis, he explained that he could not give the specific underlying cause precipitating her disease. Thus, the State failed to sustain its burden of proof. The respondent may not be committed to a mental hospital against her will based upon a medical opinion which is unsupported by clear and convincing evidence.

■■ Respondent contends further, and we agree, that even assuming *arguendo* that the State met its burden of proof and established that she was suffering from a mental disorder, that there was no direct evidence, either by Dr. Munoz, or by any other person establishing that she was a danger to herself or others, or that she was unable to care for herself.

Initially, Dr. Munoz's testimony falls short of establishing by clear and convincing evidence that the respondent was a danger to herself or to

others. He testified that the treating physician's report described the scratches on the respondent's wrists as superficial, not requiring stitches. Dr. Munoz, however, had never seen these scratches himself since the respondent's wrists were covered by bandages and handcuffs. While there were certain hearsay statements to the effect that respondent intentionally inflicted these wounds upon herself, respondent testified that she did not try to kill herself, but had been injured while playing with her cats. There was no medical evidence establishing whether the scratches were more likely to be the result of razor blade wounds or cat scratches. In addition, there was no testimony regarding respondent's behavior during the three day interim between her emergency hospitalization and trial; there was no evidence establishing that she was violent or that she displayed any unusual conduct demonstrating that she would be a danger to herself or others. Finally, when asked whether respondent would reasonably be expected to intentionally or unintentionally harm herself, Dr. Munoz replied "more likely than not," a response that does not satisfy the clear and convincing requirement.

By comparison, the case of *In re Wisniewski* (1st Dist. 1975), 27 Ill. App. 3d 104, 326 N.E.2d 463 (abstract), presented much stronger evidence of the respondent's dangerous propensities. In *Wisniewski*, the respondent was alleged in the original petition to have threatened persons with a knife and to have set fire to a building. The doctor further testified that respondent had delusions about her neighbor appearing with a hatchet and an ax every time she opened the door, and that if she acted upon these delusions there was a possibility that she could be a danger to herself and others. Moreover, respondent's son testified that the police had taken a knife away from her when they were taking her to the hospital; respondent testified that she kept the knife by the door for protection. The court reversed the finding that respondent was in need of mental treatment, since at the time of the hearing the case was devoid of clear and convincing proof establishing that the respondent would intentionally or unintentionally physically injure herself or others.

The recent cases of *People v. Espinoza* (1st Dist. 1977), 54 Ill. App. 3d 36, 369 N.E.2d 325, and *In re Spain* (1st Dist. 1977), 54 Ill. App. 3d 26, 369 N.E.2d 305, where this court affirmed the lower court's findings stand in sharp contrast to the case at bar and are clearly depictive of the facts which demonstrate a respondent's potential to harm himself and others.

In *Espinoza*, the respondent was taken to the emergency room of a hospital after he attempted to commit suicide by taking an overdose of tranquilizers. In addition, the evidence disclosed that he wanted to harm himself and commit suicide. At the hearing, the respondent testified that

he admitted hearing voices. Similarly, in *Spain*, the respondent had a history of violent and deranged behavior. He had previously overdosed on pills, had hallucinations, threatened his father and violently grabbed him three months prior to his commitment, and had grabbed his mother and pinched her arm while stating "I'll see you in your grave" on the day of his admission. At the hearing, a rehabilitation counselor testified that the respondent had voluntarily entered Madden, admitted to hearing voices, and believed that someone had planted a transmitter in his brain. The psychiatrist, diagnosed the respondent as suffering from a schizophrenia, paranoid type and recommended hospitalization.

The final grounds on which a need of hospitalization can be based after a mental disorder has been established, is that the person is unable to care for herself. There is no direct evidence that respondent would be unable to care for herself; in fact Dr. Munoz testified that she stated that she did intend to return to her job.

■■ In summary, we find that the State's case must rise or fall on the testimony of Dr. Munoz. The roommate who made the original allegations and notified the police of the incident so that respondent could be taken to the hospital did not appear at the hearing and did not testify. In addition, the State failed to produce any evidence regarding respondent's background; there was no evidence depicting her interrelationships with family members, co-workers, neighbors or friends. Hence, we conclude that the evidence adduced at the hearing was insufficient to support a finding that the respondent was in need of mental treatment.

For the foregoing reasons, we find that the record in this case and the applicable law does not support the trial court ruling. Accordingly, the judgment of the circuit court of Cook County is reversed.

Reversed.

DOWNING, P. J., and STAMOS, J., concur.