*In re* ELAINE FIELDS.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* ELAINE FIELDS, Respondent-Appellant.)

First District (5th Division)   No. 77-1516

Opinion filed May 26, 1978.

James J. Doherty, Public Defender, of Chicago (Timothy P. O'Neill, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Linda Dale Woloshin and William G. Pileggi, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

Respondent was asserted to be in need of mental treatment by a petition filed by her mother and supported by two certificates of need for hospitalization filed by two licensed physicians. Following a hearing conducted on August 16, 1977, respondent was found to be in need of mental treatment (Ill. Rev. Stat. 1977, ch. 91½, par. 1—11) and ordered to be hospitalized at Tinley Park Mental Health Center. Subsequent to the filing of the notice of appeal, respondent was absolutely and unconditionally discharged on September 16, 1977. On appeal, respondent contends that the State failed to prove by clear and convincing evidence that she was in need of mental treatment.

We agree with respondent and reverse the finding of the circuit court.

At the hearing, Mehdi Golchini, a licensed psychiatrist, testified that based on an interview with respondent, on her records and on conversations with her mother and people treating her, he recommended hospitalization. Without further treatment, the doctor felt that respondent, a schizophrenic, might intentionally or unintentionally harm herself, although he was unable to conclude whether she would harm others. Furthermore, it was Golchini's opinion that she was unable to care for herself.

The doctor's findings were based on the following facts: During an interview with respondent, she admitted that she obeyed voices directing her to walk outside nude. Furthermore, she did not cooperate with treatment, was withdrawn, was not "communitive [sic]" and had tried to escape from the hospital. Based on conversations with the social worker and respondent's mother concerning respondent's 24-hour home visit, the doctor felt that her behavior indicated an inability to care for herself as well as a potentiality for harm to herself. Specifically, Golchini heard that she had threatened to jump from a window during her visit and was suicidal. During cross-examination Golchini stated that to his knowledge, she never tried to harm herself or others while she was in the hospital. Furthermore she demonstrated her capability of taking care of her personal hygiene as well as dressing herself.

Margaret Fields, respondent's mother, testified that two weeks before, her daughter had received a 24-hour pass from the hospital in order to attend her sister's wedding. Respondent visited her mother for approximately 20 minutes. Mrs. Fields then took her daughter to the bank and left her there. Respondent was then supposed to go to a store to purchase clothes to wear to the wedding. When she did not appear at the

wedding, Mrs. Fields telephoned her and she said that she was not planning to attend. When Mrs. Fields returned from the wedding, she called respondent again, informing her that she had to take her back to the hospital. At first, she said that she did not want to return. However, Mrs. Fields did take her back to the hospital.

Although the record is unclear whether it was during this conversation or another, respondent told her mother on the phone that she felt like jumping out of the window because of some food she had eaten. However, during cross-examination, Mrs. Fields stated that to her knowledge her daughter has never tried to commit suicide nor harm anyone else. Both during direct and cross-examination Mrs. Fields stated that she felt that if her daughter were remanded to her care and supervision, she could take care of herself.

After the State rested and respondent's motion for a directed finding was denied, respondent testified in her own behalf. She stated that she did not intend to commit suicide at the time of the phone call with her mother. She further stated that she did not want to harm anyone. She felt she was capable of going home, and would "take out-patient clinic," and also take her medication. Before she went into the hospital, respondent stated that she took care of her finances.

James Willis testified that respondent had rented a room from him for eight years. During that time, she always paid her rent. To his knowledge, she never tried to harm anyone including herself.

During cross-examination, Willis alluded to the event which gave rise to respondent's hospitalization in June: She walked out of the house nude and Willis figured that she was sleep walking. He called out to her and ran to get her coat, but before he could reach her, the police intercepted her on the corner and took her to the hospital. Respondent had been under a great deal of strain for a year because of her husband's illness and death in December.

Margaret Fields was recalled and testified that she had been taking care of respondent's child since April 5. Before then, the child had spent time with respondent's in-laws. Mrs. Fields testified that every couple of days her daughter called her and asked that she take care of her child because she felt tired. The child is healthy, well fed and clothed.

The trial judge found that respondent was a person in need of mental treatment and ordered her placed in Tinley Park Mental Health Center.

OPINION

■■ At the outset, we note that the State contended in its brief that this appeal be dismissed as moot because respondent had already been absolutely discharged from Tinley Park. However during oral argument the State conceded that it would be bound by our court's recent decision

in *In re Garcia* (1978), 59 Ill. App. 3d 500, 375 N.E.2d 557. In that case we held that the mootness doctrine is generally not applicable to mental health cases. We see no reason to depart from this principle in the instant case, since here, as in *Garcia* and the cases cited therein, we cannot determine, as we are required to under the mootness doctrine, that no collateral consequences would flow from respondent's commitment. (See, *e.g.*, *In re Ballay* (D.C. Cir. 1973), 482 F.2d 648, *In re Graham* (1976), 40 Ill. App. 3d 452, 352 N.E.2d 387, *In re Sciara* (1974), 21 Ill. App. 3d 889, 316 N.E.2d 153, *In re Hatley* (1977), 291 N.C. 693, 231 S.E.2d 633.) This is true despite the fact that respondent has been committed on previous occasions. We said in *Garcia* "* * * it is difficult to determine at what point the number of commitments would render a person's reputation to be irredeemable." As respondent points out this latest commitment may hurt her chances of employment, affect her ability to maintain custody of her child, and could conceivably increase the probability of recommitment. *In re Graham* (1976), 40 Ill. App. 3d 452, 352 N.E.2d 387.

In addition we note that *People ex rel. Craine v. Boyd* (1976), 41 Ill. App. 3d 538, 353 N.E.2d 696, which the State relied on in *Garcia* and in the instant case for the proposition that the appeal was moot, is distinguishable on its facts. Although the court in *Boyd* held that respondent's latest commitment and subsequent discharge would redeem rather than endanger his reputation, in that case respondent's record disclosed, in addition to a previous commitment, an arrest for rape of a child, and a mandatory release from a prison sentence for indecent liberties with a minor. Perhaps in such a situation a record of the treatment and discharge of the patient would inure to his benefit. We cannot agree that this would be true in the instant setting. Consequently, we reach the merits of this case.

Respondent concedes that she was afflicted with a mental disorder. However, she contends that the State failed to prove by clear and convincing evidence (*In re Stephenson* (1977), 67 Ill. 2d 544, 367 N.E.2d 1273) that, as a result of this disorder, she was unable to care for herself or that she was a danger to herself or others (Ill. Rev. Stat. 1977, ch. 91½, par. 1—11). We agree.

■■  In order to prove that a person is a danger to himself or others, the State must show, by clear and convincing evidence, that he "is reasonably expected at the time the determination is being made or within a reasonable time thereafter to intentionally or unintentionally physically injure himself or other persons." (Ill. Rev. Stat. 1977, ch. 91½, par. 1—11.) Thus, while the State need not prove with certainty that the patient will be dangerous in the future, it must be shown that the person is reasonably expected to engage in dangerous conduct in the future. *People v. Bradley*

(1974), 22 Ill. App. 3d 1076, 318 N.E.2d 267; *People v. Sansone* (1974), 18 Ill. App. 3d 315, 309 N.E.2d 733.

■■ While the State contends that respondent's threat to jump out of the window, her failure to cooperate with medical treatment, and her behavior as evidenced by the street incident, demonstrate her potential for danger to herself, we feel this evidence falls short of the quantum of proof necessary to sustain a finding of need of mental treatment. (See *In re Dieter* (1977), 55 Ill. App. 3d 7, 370 N.E.2d 84.) It appears that the so-called suicidal threat occurred shortly before respondent was to return to the hospital. She testified that she never intended to carry out that threat. Furthermore, her mother and landlord each testified that she has never attempted to harm herself. The assertion by the doctor that respondent did not cooperate with treatment was not supported by any specific examples and during the hearing, respondent promised to take her medicine and participate in the out-patient clinic. In addition, she cooperated with her mother when she was told she had to return to the hospital. Finally, it appears that the incident during which she walked out of the house nude was an isolated event, and without more evidence, is insufficient to sustain a finding that respondent was a danger to herself. See *In re Dieter* (1977), 55 Ill. App. 3d 7, 370 N.E.2d 84.

The psychiatrist was unable to conclude whether she would be a danger to others. The proof here is much less than existed in *In re Doe* (1978), 56 Ill. App. 3d 1052, 372 N.E.2d 866, where respondent engaged in fights and other violent behavior and the court held that she was not a danger to herself and others, although it did find that she was unable to care for herself.

In the instant case, there is a dearth of evidence of demonstrating respondent's potentiality for danger to others. We are primarily concerned with the welfare of respondent's daughter but the facts lead us to believe that she is well cared for. Respondent is aware of her responsibility toward her child as evidenced by her insuring that her mother or in-laws take care of the child, when she is feeling tired. Furthermore, the child is clothed, well fed and healthy.

■■ We also conclude that respondent was not proved to be unable to care for herself. It must be shown that a person is unable "to guard himself from physical injury or to provide for his own physical needs." (Ill. Rev. Stat. 1977, ch. 91½, par. 1—11.) The thrust of the evidence in this case is that respondent was quite capable of attending to her physical needs. She clothed and fed herself, took care of her personal hygiene and was able to handle her financial affairs. Again, the incident on the street, without more, fails to prove that she was unable to guard herself from physical harm.

■■ Thus, upon considering the merits of this case, we conclude that the

facts and medical opinion here have not established by clear and convincing evidence that respondent was in need of mental treatment. Accordingly, we reverse the order of commitment.

Reversed.

LORENZ and MEJDA, JJ., concur.