In re EDWARD CRENSHAW.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. EDWARD CRENSHAW, Respondent-Appellant.)

First District (2nd Division)    No. 77-615

Opinion filed July 5, 1978.

James J. Doherty, Public Defender, of Chicago (Gail A. Moreland, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, James S. Veldman, and Mark E. Rakoczy, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BROWN delivered the opinion of the court:

Respondent, Edward Crenshaw, was found to be in need of mental treatment (Ill. Rev. Stat. 1977, ch. 91½, par. 1—11) after a hearing in the circuit court of Cook County on December 14, 1976. On appeal, respondent contends (1) that he was not proved to be in need of mental treatment by clear and convincing evidence, (2) that his motion for judgment on the pleadings should have been granted and (3) that the trial judge erred by consulting a private source in order to interpret a doctor's diagnosis and by refusing to allow respondent's counsel to cross examine the doctor on that diagnosis.

In an emergency petition for hospitalization, respondent was alleged to be in need of mental treatment. The petition stated that on December 6, 1976, respondent was "riding up and down on a bus—no destination. Not talking. Not able to cooperate. Out of contact." The petition further stated witnesses to these acts were a policeman (star number 274) and Malcolm X Mental Health Center staff, and that a certificate of a physician was attached. That certificate, executed by a psychiatrist, stated that the respondent was personally examined on December 5, 1976; found to be

"in need of mental treatment"; "likely to harm self"; and "unable to care for self." A second certificate was also attached in which Dr. Coshini, a psychiatrist, stated that the respondent was personally examined on December 13, 1976; found to be "in need of mental treatment" and in need of hospitalization because he is likely to harm himself. The second certificate also stated that respondent "has the feeling people are against him and want to hurt him; that is why he stayed on the bus and was not leaving the bus and got arrested. Pt. has history of mental problem, has difficulties to communicate and cannot care for himself at this time."

At the inception of the hearing on December 14, respondent's counsel made a motion for judgment on the pleadings on the basis that even if the facts alleged in the petition were proved, it was an insufficient ground for commitment. The court took the motion under advisement, and directed the petitioner to proceed with its evidence.

Mr. Schwartz, a clinical psychologist, testified that he examined the respondent the week before the hearing, and found him to be ambivalent and unable to speak. Mr. Schwartz related how the respondent, on attempting to rise from a chair, stopped or got stuck about half-way up and then very slowly completed straightening up before walking into Mr. Schwartz's office. Mr. Schwartz further testified that he offered respondent the opportunity to sign in to the hospital as a voluntary patient, but that respondent once more displayed extreme ambivalance and could not decide between signing in or not. Based on the respondent's ambivalence, including his slow physical motions, Mr. Schwartz concluded that respondent was catatonic and in need of hospitalization.

On cross-examination, Mr. Schwartz stated that respondent was schizophrenic, catatonic type. When defense counsel attempted to elicit other symptoms of catatonia, the State objected. In ruling on the objection, the court stated, "The objection is sustained and from the Record, I am sure you are fully informed. Glossary defines ambivalence as the co-existence of two opening drives, desires, feelings, or emotions toward the same person, object, or goal. These may be conscious on one side or the feelings may be unconscious. Example: love and hate toward the same person—and what the doctor—Mr. Schwartz—has described here is conclusive as to why he deems this person is catatonic, based on his observations of what he described as ambivalence of this subject." Mr. Schwartz then explained that it was the respondent's extreme ambivalence that caused him to be unable to respond to the questions put forward to him, and which caused the marked slowness in his locomotion.

Dr. Coshini, a psychiatrist, testified that he had examined respondent on two occasions. The first time, Mr. Schwartz brought him to the office. On this occasion, respondent was quite slow in his movement, remained mute, and could not decide whether or not to sign in. During the second

examination, the respondent was able to say a few words and his movements were faster and more flexible, but respondent was again very ambivalent as to what he wanted to do. The respondent told Dr. Coshini that prior to his admission he had the feeling that people wanted to hurt him and that they wanted to get him; that he was extremely afraid and scared and didn't know what to do; and that, when he was on the bus, he was confused, didn't know where to go and was walking from one end of the bus to the other. The respondent further related that he had been in mental hospitals before; that he was taking medication and was doing pretty well, but in the past few months he had stopped taking medication and he had started becoming more fearful and paranoid that people wanted to hurt him.

Dr. Coshini stated that there was no doubt in his mind that Mr. Schwartz's observation was right. The respondent suffered from a mental illness known as schizophrenia, chronic differentiated type. It was Dr. Coshini's recommendation that the respondent be placed in a hospital for a few more weeks and then, after discharge, that he go to the outpatient department.

On cross-examination, Dr. Coshini testified that upon talking to respondent that day, the respondent showed some sign of improvement; that he gave appropriate answers to the doctor's questions; that he was oriented and knew where he was, and that he was not confused in the organic sense. However, it was Dr. Coshini's opinion that because of the respondent's catatonic feature, slowness, and not knowing what he wants to do, respondent would be unable to care for himself.

After the State rested, the court denied the previous motion that the petition was insufficient, and denied a motion for a directed finding based on the lack of clear and convincing evidence.

The respondent then took the stand and testified he did not think mental treatment would help him. He stated that he generally lived with his sister and that he would return there if he was discharged. In response to questions from the court about the bus episode, respondent said, "I couldn't make up my mind whether I wanted to get off the bus. There is nothing illegal about that. A lot of people can't make up their minds." The respondent further testified that he had been laid off his job and that he was receiving public assistance.

The trial judge found that respondent was in need of mental treatment and of hospitalization. Respondent was then committed to Tinley Park Mental Health Center and this appeal followed.

OPINION

■■ The Mental Health Code defines a person in need of mental treatment as one who is afflicted with a mental disorder as a result of

which he is reasonably expected to intentionally or unintentionally physically injure himself or other persons, or is unable to care for himself so as to guard himself from physical injury or to provide for his own physical needs. (Ill. Rev. Stat. 1977, ch. 91½, par. 1—11.) The State must show by clear and convincing evidence that respondent is in need of mental treatment. *In re Stephenson* (1977), 67 Ill. 2d 544, 367 N.E.2d 1273.

Respondent first contends that he was not proved by clear and convincing evidence to be in danger to himself or others or that he was unable to care for himself. We agree.

In *People v. Bradley* (1st Dist. 1974), 22 Ill. App. 3d 1076, 1081-82, 318 N.E.2d 267, the examining doctor testified that the respondent was tense during the interview, kept his hands withdrawn and distant, would not discuss the hospitalization, would not cooperate, was suspicious, and would not respond about hallucinating experiences. Further, the respondent told the doctor he was unable to get a fair trial in America since his life style was "Anti-American, he was being 'railroaded,' was concerned about the mistreatment of his family, and race, and all of the books written, all of the movies made," and when he got access to the communication media, he would let the world know his thoughts. This court reversed the respondent Bradley's commitment since it found that neither the facts upon which Dr. Rebic's medical opinion was based nor the medical opinion itself were clear and convincing.

A similar result was reached in the case of *In re Dieter* (1st Dist. 1977), 55 Ill. App. 3d 7, 370 N.E.2d 84, wherein the doctor testified that respondent had been admitted to a hospital for wrist wounds; that during his examination of respondent she was silent for the most part, although she answered some of his questions. He further testified that he did not know how her memory or thinking process were, but that they appeared to be coherent and relevant to his questions. Although diagnosing that respondent had a depressive neurosis, he explained that he could not give the specific underlying cause precipitating her disease. In reversing an order finding respondent in need of mental treatment, this court held that the respondent could not be committed to a mental hospital against her will based upon a medical opinion which is unsupported by clear and convincing evidence.

The evidence presented in this case is also insufficient to support the trial court's ruling. On the date of the hearing, Mr. Schwartz testified that based solely on respondent's ambivalence during a half hour examination the week before the hearing, respondent was in need of hospitalization. Mr. Schwartz then added, "I have not seen him, however, since last week. I don't know what shape he is in now. He might very well do differently now."

■■ Dr. Coshini, based on two examinations of the respondent, testified

that respondent was definitely suffering from a mental illness—schizophrenia. However, proof of mental illness by itself is not enough to establish the need for mental treatment. (*In re Sciara* (1st Dist. 1974), 21 Ill. App. 3d 889, 316 N.E.2d 153.) The State must also prove that respondent was a danger to himself or others, or that he was unable to care for himself.

In this regard the following colloquy between Dr. Coshini and the State is relevant:

"Q. As a result of that diagnosis—mental illness—do you believe he would be unable to care for himself if he were to be discharged without further treatment and admission?

A. Yes, particularly with this situation that he doesn't know what he wants to do and was in the bus and that feeling that he didn't know where he wanted to go; he was supposed to go and apparently his paranoia was so great at that time it got the best of his judgment and he couldn't make a judgment for himself. But, as I mentioned if he stays in the hospital for probably a few more weeks and takes his medicine, he would reintegrate.

\* \* \*

Q. Do you believe that he will be unable to protect himself against physical injury?

A. Well, it seems to me it's simply a matter of his protection.

Q. Would he unintentionally harm himself?

A. Unintentionally, I believe. He has a paranoid feeling that people want to get him and hurt him and this sort of thing. When put in a certain situation, it would be very, very difficult if he stays catatonic for him to take care of himself."

Dr. Coshini never became more specific than this on the elements of dangerousness and inability to care for self. In addition, the State failed to introduce any direct evidence in support of the doctor's medical opinion of acts of past harmfulness or respondent's prior inability to care for himself. On the other hand, respondent's answers to questions at the hearing were coherent and responsive, and he failed to display any signs of his prior ambivalence. Furthermore, respondent testified that he lived with his sister and received public assistance since he was laid off his job.

■■ All the State actually proved was that respondent had been unable to make up his mind. This does not rise to the level of clear and convincing proof required to force mental treatment on an individual who is unwilling to accept it voluntarily. This court has held that the mere establishment of a mental problem is not an adequate basis upon which to confine a person who has never harmed or attempted to harm either himself or another. (*People v. Sansone* (1st Dist. 1974), 18 Ill. App. 3d 315,

309 N.E.2d 733.) Furthermore, it appears that the bus incident was an isolated event, and without more evidence, is insufficient to sustain a finding that respondent was a danger to himself. See *In re Fields* (1978), 60 Ill. App. 3d 869, 377 N.E.2d 301.

In view of our determination of the first issue in the case, the other contentions raised by respondent need not be discussed. We should note in passing, however, that notwithstanding the insufficiency of a petition and supporting doctors' certificates, this court has held that if at a subsequent hearing a respondent is found by clear and convincing evidence to be a person in need of mental treatment, that finding should not be reversed solely because of an improper petition. *People v. Ralls* (5th Dist. 1974), 23 Ill. App. 3d 96, 318 N.E.2d 703.

■■ Finally, the State stated during oral argument of this cause that the respondent had left the hospital without proper authorization. The State subsequently filed a motion to dismiss the appeal on this basis, and the motion was taken with the case.

The issue raised by this motion is whether respondent's appeal should be dismissed because he would no longer benefit from a disposition of the appeal. The cases cited by the State, *People v. Estep* (1952), 413 Ill. 437, 109, N.E.2d 762, and *Molinaro v. New Jersey* (1970), 396 U.S. 365, 24 L. Ed. 586, 90 S. Ct. 498, are not persuasive as these cases are criminal in nature and deal with fugitives from justice, whereas this case is civil in nature (Ill. Rev. Stat. 1977, ch. 91½, par. 2—3.) Nothing in either opinion suggests that a patient who leaves a mental health center has waived his right to have his commitment reviewed.

Furthermore, we note this court has recently held that appeals should not be dismissed as moot merely because a respondent is absolutely discharged from a mental institution before the appeal is heard. (*In re Garcia* (1st Dist. 1978), 59 Ill. App. 3d 500, 375 N.E.2d 557.) We see no reason to depart from the application of this principle in the instant case. The respondent is entitled to a review of the finding that he is in need of mental treatment. The motion to dismiss the appeal is therefore denied.

In conclusion, we find that the record in this case and the applicable law does not support the trial court ruling. Accordingly, the judgment of the circuit court of Cook County is reversed.

Reversed.

DOWNING and PERLIN, JJ., concur.