*In re* SHANE L. MEEK (The People of the State of Illinois, Petitioner-Appellee, v. Shane L. Meek, Respondent-Appellant).

Fourth District   No. 4—84—0534

Opinion filed March 19, 1985.

Daniel D. Yuhas and Deborah L. Rose, both of State Appellate Defender's Office, of Springfield, for appellant.

Jeffrey K. Davison, State's Attorney, of Decatur (Robert J. Biderman and Peter C. Drummond, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

This appeal lies from a finding of the circuit court of Macon County that the respondent, Shane Meek, was a person subject to involuntary admission to the Department of Mental Health on July 20, 1984. A notice of appeal was timely filed from the trial court's writ of hospitalization and subsequently briefs were filed by the parties. Following the filings of the briefs, a motion to dismiss the appeal as moot was filed by the petitioner. The motion, and the objections thereto, were ordered taken with the case by this court.

Some factual background is necessary, as it forms the basis for our determination that the appeal should not be dismissed. On July 16, 1984, a petition for involuntary admission was filed. Following a hearing on July 20, 1984, the respondent was found to be a person subject to involuntary admission and was ordered hospitalized in the Department of Mental Health and Developmental Disabilities. It is from this order that the respondent appeals.

On July 23, 1984, the circuit clerk was ordered to file notice of appeal for the respondent, as the court had been advised that the respondent desired to appeal. The office of the State Appellate Defender was appointed to represent the respondent on appeal. The notice of appeal was filed on July 26, 1984, by the circuit clerk. However, on September 19, 1984, the respondent voluntarily reap-

plied for admission to the Adolf Meyer Zone Center, the mental health facility into which he had been committed.

Generally, the mootness doctrine does not apply to mental health cases. (*In re Garcia* (1978), 59 Ill. App. 3d 500, 375 N.E.2d 557.) This general rule was promulgated in recognition of exceptions to the mootness doctrine: (1) when dismissal would eliminate an entire class of cases from appellate review, and (2) where there are collateral legal consequences which survive the expiration of the order under review. *In re Sciara* (1974), 21 Ill. App. 3d 889, 316 N.E.2d 153.

An initial order for hospitalization may not exceed 60 days pursuant to section 3—813(a) of the Mental Health and Developmental Disabilities Code (Code) (Ill. Rev. Stat. 1983, ch. 91½, par. 3—813(a)). Thus, it is apparent that such orders would normally come within the purview of the mootness doctrine and must be subject to the exception, since dismissal would eliminate an entire class of cases from appellate review, *i.e.*, a single 60-day admission.

Moreover, it has been held that the question of the collateral consequences exception must be considered on a case-by-case basis. The reviewing court must examine the totality of circumstances, as an adjudication could return to plague a respondent in some future proceedings and could affect other aspects of the respondent's life. Thus, *Sciara* allows the application of the mootness doctrine only where there are no possible future adverse collateral legal consequences.

Petitioner argues that (1) since the respondent herein has been discharged from his involuntary admission, this cause is moot, and the appeal should be dismissed; and (2) under this court's decision in *In re Wathan* (1982), 104 Ill. App. 3d 64, 432 N.E.2d 670, respondent's subsequent voluntary commitment has confirmed the findings of the trial court that he was in need of treatment for mental illness.

We find the circumstances of this cause to be distinguishable from those presented in *Wathan*. In that case, the respondent was the subject of a petition for involuntary admission on March 31, 1981, and was adjudicated a person subject to involuntary admission and ordered hospitalized. On June 3, 1981, a second petition for involuntary admission was filed and, after hearing, the respondent was again found to be a person subject to involuntary admission and was again ordered hospitalized. It was from this second order of involuntary admission that the respondent appealed. However, on August 25, 1981, the respondent applied for voluntary admission to the mental health facility into which he had been committed. This court held the mootness doctrine applicable, stating that the respondent's actions merely confirmed the finding of the trial court that he was in need of treat-

ment for mental illness, and that his own actions eliminated any possibility of future adverse collateral legal consequences. Although the record shows that the respondent in this case had two voluntary commitments prior to the involuntary commitment, which is the subject of this appeal, we find a qualitative distinction between voluntary and involuntary commitment. The point in *Wathan* was that the first commitment had not been appealed and stood for whatever collateral consequences might emanate therefrom. As this appears to be the respondent's first involuntary commitment, we find this to be a case where the mootness doctrine does not apply. Petitioner's motion is, therefore, denied.

Proceeding to the merits of the appeal, respondent argues (1) that his involuntary commitment must be reversed because the State failed to show by clear and convincing evidence that he was a danger to himself; and (2) that the trial court's order subjecting him to involuntary commitment must be reversed because the State failed to introduce sufficient evidence on dispositional alternatives to hospitalization to permit the court to comply with statutory requirements thereon.

■ Under Illinois law, involuntary admission is not to be made unless necessary for the protection of the person or others from physical harm, as based on particular acts or significant threats of such harm. (Ill. Rev. Stat. 1983, ch. 91½, pars. 3—601, 3—701.) No respondent may be found subject to involuntary admission unless that finding has been established by clear and convincing evidence. (Ill. Rev. Stat. 1983, ch. 91½, par. 3—808.) This standard requires a high level of certainty before finding an individual in need of mental treatment and curtailing his liberty, but does not place an impossible burden on the State in proving its case. (*In re Stephenson* (1977), 67 Ill. 2d 544, 556-57, 367 N.E.2d 1273, 1278.) We have reviewed the evidence in this case and believe that the State has met its burden.

The petition in this case was supported by the certificates of Linda Perry, out-patient therapist with Douglas County Mental Health, and Dr. Alfredo Jocson, staff psychiatrist at the Adolf Meyer Zone Center. Perry first met respondent on July 5, 1984, at the Douglas County jail, at which time his left wrist was mutilated and bleeding. Respondent told Perry he had cut his wrist with a razor blade deliberately, as he was depressed and had no reason to live. Perry took respondent back to Douglas County Mental Health to speak to Dr. Sellers, a registered psychologist. On July 11, 1984, respondent called Perry from the Illini Motel, and they had a general conversation. On Friday, July 13, 1984, respondent again called Perry and told her he was depressed and suicidal, and that he had no reason to live. Re-

spondent at that time described how he was going to kill himself. Perry had three or four such phone conversations with respondent on that date. On the following morning, respondent again called Perry, and said he was still looking for options but was tired of living and could not go on. He described suicidal ideation and made suicidal threats. During that Friday and Saturday, Perry made numerous phone calls to the Champaign mental health authorities and the sheriff's department regarding respondent's suicidal ideation and his whereabouts. On Saturday, she called the sheriff's department and requested they pick the respondent up. At that time, respondent voluntarily walked into the Douglas County jail. Perry went to the facility to see respondent, and noted he had fresh scratches on his left arm. Respondent told her he was depressed and did not want to live. At that time, Perry concluded that respondent was in danger of harming himself. Respondent was retained in jail on a disorderly conduct charge. On Monday, July 16, 1984, Perry signed the petition for respondent's involuntary commitment.

Dr. Jocson testified that he spoke to respondent on July 16, 1984, and found him depressed at that time. Respondent admitted to Jocson that he had tried to harm himself by cutting his wrists. Jocson observed superficial scratches on respondent's left wrist. Based on respondent's past history and hospitalizations at Adolf Meyer Zone Center, Jocson concluded that respondent was in danger of harming himself within the near future.

Respondent took the stand and testified acknowledging that on three or four days in July he told Perry he wanted to kill himself. He further acknowledged that when he spoke to Jocson he told him he was depressed and was trying to harm himself. He testified that as of the date of the hearing, July 20, he no longer wanted to hurt himself.

According to the representations of the respondent's counsel to the trial court at the beginning of the July 20 hearing, respondent had been hospitalized involuntarily since Monday, July 16, the date the petition was filed. Respondent compares the evidence produced by the State in this case to that found insufficient in *In re Dieter* (1977), 55 Ill. App. 3d 7, 370 N.E.2d 84. In *Dieter*, the respondent was alleged to have attempted suicide by cutting both wrists, yet the cuts were described as superficial scratches not requiring stitches. The respondent, Dieter, testified that she had been injured while playing with her cats, and no further testimony was offered to establish whether the scratches were more likely to be razor blade wounds or cat scratches. Likewise, no testimony was offered as to the respondent's behavior during the three-day interim between her emergency hospitalization

and the hearing, and none was offered establishing violent or unusual conduct demonstrating she would be a danger to herself or others. Contrary to respondent's assessment of *Dieter*, we find that case distinguishable, as in this case respondent's own testimony indicated that at the time of his involuntary admission he wanted to harm himself.

█ Respondent next complains that the decision to commit him was made with insufficient information as to whether involuntary commitment was appropriate because of alleged insufficiencies in the report before disposition. (Ill. Rev. Stat. 1983, ch. 91½, par. 3—810.) He states that he has been prejudiced by the lack of detail in the report and testimony directed thereto, which precluded the trial court from considering the possibility that a less restrictive alternative treatment might have achieved the same goals of enabling him to function normally. The State argues that the respondent has waived this issue by his failure to present evidence as to other less restrictive environments which were available; or alternatively, that the issue is moot.

We find the doctrine of waiver applicable. Section 3—810 of the Code requires:

> "Before disposition is determined, the facility director or such other person as the court may direct shall prepare a report including information on the appropriateness and availability of alternative treatment settings, a social investigation of the respondent, a preliminary treatment plan, and any other information which the court may order. The treatment plan shall describe the respondent's problems and needs, the treatment goals, the proposed treatment methods, and a projected timetable for their attainment. If the respondent is found subject to involuntary admission, the court shall consider the report in determining an appropriate disposition."

Contrary to respondent's argument, the statute does not require a "detailed report" on treatment alternatives, and any objections available as to deficiencies in detail ought to be raised in the trial court. The report submitted in this case stated that the Adolf Meyer Zone Center would be the least restrictive facility available. Dr. Jocson also testified that commitment to the Department was the least restrictive environment. Respondent raised no questions below with regard to the adequacy of the report submitted to the court before disposition, and offered no suggestion as to a less restrictive alternative than that which was made. Under the circumstances of this case, we find the respondent's failure to bring alleged deficiencies to the attention of the trial court to be comparable to the situation of a defendant who

inspects a presentence report, but fails to bring deficiencies raised on appeal to the attention of the trial court. As the waiver doctrine has been applied in the latter case (*People v. Meeks* (1980), 81 Ill. 2d 524, 411 N.E.2d 9), so may it be applied here.

Affirmed.

GREEN, P.J., and WEBBER, J., concur.