*In re* MARY HABER. —(THE PEOPLE *ex rel.* SAMUEL HABER, Petitioner-Appellee, *v.* MARY HABER, Respondent-Appellant.)

First District (1st Division)   No. 79-515

Opinion filed November 26, 1979.

Lowell E. Sachnoff and Andrew M. Schatz, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and Susan Condon, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Respondent Mary Haber was found to be in need of mental treatment (Ill. Rev. Stat. 1977, ch. 91½, par. 1—11) after a hearing in the circuit court of Cook County and committed to the Department of Mental Health. Respondent appeals arguing (1) that the trial court improperly considered only nonexpert testimony on the issue of whether she was capable of caring for herself or was likely to cause harm to herself or others and (2) that the State failed to prove by clear and convincing evidence, that respondent was a person in need of mental treatment.

We affirm.

The facts are not disputed. Samuel Haber, respondent's father, petitioned to have his daughter committed to a mental health facility in November of 1978. She was temporarily placed in a hospital, but soon released for a 60-day period so that she could obtain outside consultation.

During this outpatient period, respondent consulted two psychiatrists who later testified at a hearing to determine her need for commitment to the Department of Mental Health. Dr. Miller testified that he had four office visits with respondent from November 17 to December 19, 1978. In addition, Dr. Miller reviewed the records of respondent's prior hospitalizations, consulted with her previous therapist, and met with her parents in order to obtain a complete psychiatric history. Based on his findings, he diagnosed respondent as a "true paranoid schizophrenic." He testified that persons afflicted with this disorder were suspicious, bitter, angry, demeaning and suffered from delusions. They were also prone to violence and anger.

After her last visit with Dr. Miller, respondent and her attorney requested a written statement that she was not a danger to herself or others. Dr. Miller wrote such a letter, but later testified that he did so reluctantly and only so that a therapeutic relationship could be maintained. It is undisputed that the letter was written *before* he received respondent's records of her prior hospitalizations.

The other psychiatrist consulted by respondent during the outpatient period was Dr. Philip McCullough. He testified that he did not believe that respondent was likely to inflict harm upon herself or others. His opinion, however, was based only on several visits with respondent. He never consulted with her family or other doctors. Although his diagnosis differed with Dr. Miller's, he admitted that persons with respondent's illness have a greater propensity to harm themselves or others than the general population. He, too, added that he did not want respondent hospitalized since it would disrupt their therapeutic relationship.

In addition to the psychiatric testimony, several lay witnesses also testified during the subsequent hearing on the petition. Sarah Moran testified that she received numerous threatening phone calls. The caller was later identified as respondent. During the calls, respondent would say such things as "You don't have long to live, baby"; "You are going to be dead"; and "People will come after you with guns and knives."

Michael Rees testified that he met respondent at a party where she told him that Sarah Moran had to be "wiped out, snuffed out, eliminated."

Dorothy Haber, respondent's mother, testified that on November 1, 1978, respondent told her parents she would "pound them into the ground and break every bone in their body." On the same date, respondent also picked up a heavy metal plate and threatened to throw it at her father.

Mrs. Haber testified that once while she was driving the car, respondent grabbed the wheel and exclaimed "I could smash both of us up." Respondent later refused to leave the car, slapped her mother hard in the face, and pulled her mother's breast, hurting her. As a result, Mrs. Haber was forced to leave the car and walk two miles home. On yet another occasion, respondent told her parents that she was going to burn down the apartment and hire someone to beat her father.

Samuel Haber, respondent's father, testified. He corroborated Mrs. Haber's testimony and added that on one occasion, respondent jumped from their auto while it was moving.

During the hearing, several witnesses testified that respondent dressed inappropriately during cold weather. They testified that respondent often ventured out of doors, without a jacket and dressed in summer attire, when temperatures were only in the thirties. The testimony was offered as evidence of respondent's inability to care for herself properly.

At the conclusion of the hearing on January 11, 1979, the trial judge found respondent to be in need of mental treatment and ordered hospitalization. Respondent appeals.

On appeal, respondent first argues that the trial court improperly considered only nonexpert testimony on the issue whether respondent was likely to cause harm to herself or others, or was unable to care for herself. By failing to produce expert medical testimony on this issue, respondent contends, the State failed to meet its burden of proof.

■■ ■ We disagree. Nonexpert testimony may be considered. In *In re Graham* (1976), 40 Ill. App. 3d 452, 352 N.E.2d 387, an almost identical case, the court held that psychiatric testimony establishing that respondent was a schizophrenic, together with lay testimony that respondent threatened others, properly established respondent's need for mental treatment. Generally, expert testimony concerning respondent's likelihood of harming herself or others is not necessary as long as there is other evidence of specific acts indicating potential harm. (*In re Chapman* (1978), 67 Ill. App. 3d 382, 385 N.E.2d 56.) Consequently, we conclude that it was proper for the trial court to consider lay testimony introduced during the hearing.

Respondent next argues that she was not proved to be in need of mental treatment by clear and convincing evidence.

■■ ■ Again, we disagree. Dr. Miller diagnosed respondent as a "true paranoid schizophrenic." While he did make a written statement indicating respondent did not pose a danger to herself or others, the statement was made before he had reviewed all of her records and only so that a therapeutic relationship with respondent could be maintained. The testimony of respondent's parents clearly indicated that she was a

threat to others and in need of hospitalization even though no one had been physically harmed. As noted in *Graham*, the courts are not required to wait until someone is harmed before ordering hospitalization.

Accordingly, for the foregoing reasons, the order of the circuit court of Cook County is affirmed.

Order affirmed.

O'CONNOR and CAMPBELL, JJ., concur.