*In re* JOHN EDWARD PRINCE POWELL.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* JOHN EDWARD PRINCE POWELL, Respondent-Appellant.)

First District (4th Division)    No. 79-1564

Opinion filed June 12, 1980.

James J. Doherty, Public Defender, of Chicago (James L. Rhodes, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and Mark R. Davis, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE LINN delivered the opinion of the court:

Respondent was found to be in need of mental treatment and was involuntarily committed to the Department of Mental Health and Developmental Disabilities. On appeal respondent contends that the evidence was insufficient to justify the commitment order and that respondent should not have been called as an adverse witness.

At the commencement of the hearing on May 22, 1979, the State, over the objection of respondent's counsel, called respondent to testify as an adverse witness. (Ill. Rev. Stat. 1977, ch. 110, par. 60.) Respondent, who had never been in a mental institution before, testified that he was 27 years old and lived on the South Side of Chicago. He explained that the police placed him in custody when he blocked a doorway at a clothing manufacturer. He claimed that he had produced a clothing design book for this business and that the manufacturer owed him $1 million for his efforts. Respondent was asked what design background he had to enable him to produce his design book. He stated that he had attended a tailoring school for 3 months and it had taken him several weeks to compile his book. The following colloquy ensued:

"Q Well, did you tell the doctor that you work?

A Everybody is God.

Q Did you tell the doctor you were God?

A Everybody is God.

Q What do you mean by everybody is God?

A Everybody got sense. God has sense. Be productive, use your sense.

Q How does that fit in with your program?

A I'm being productive, making the book of design for clothes for everybody in the world, in the universe; that's productive.

Q Have you been working?

A Right.

Q What type of work do you do?

A Tailoring and design."

Respondent then mentioned several places where he had been employed. However, he had not regularly worked since 1975 and was currently receiving public assistance.

There was a stipulation to the qualifications of Dr. Steven Gestautas. He testified that he examined respondent on May 21, 1979, at the Tinley Park Mental Health Center. During the interview respondent indicated his belief that he had been unjustly arrested and did not need mental treatment. He also informed this physician about the purported debt owed him by the clothing manufacturer, and he expressed the view that he would be paid because he was God.

Dr. Gestautas stated that a review of respondent's hospital admission records showed that respondent had initially claimed that he worked at the clothing manufacturer which owed him one-half million dollars. In other respects respondent was cooperative.

Based on his examination and from review of the records, Dr. Gestautas said that respondent was suffering from schizophrenia, paranoid type, which caused him to block the manufacturer's doorway. He also expressed the view that respondent's delusions about the money owed him by the clothing manufacturer would cause him to pursue attempts to collect it. This would place respondent in a position of harming himself or others. Dr. Gestautas recommended further hospitalization and treatment, although the hospitalization need not last until his delusions disappeared.

On cross-examination this physician indicated that, as respondent demonstrated, he will act upon his delusions. Dr. Gestautas noted that, although respondent did not speak of violence, he thought that he was a god and could force payment of the money. Dr. Gestautas conceded that respondent had not harmed anyone or been harmed while at the hospital, and he had told respondent's counsel that respondent was dangerous because the police arrested him for disorderly conduct. He also believed that respondent was physically healthy.

■■ A respondent may be subjected to involuntary, civil commitment if he is shown to be in need of mental treatment because of a mental illness. In order to establish the validity of such commitment by clear and convincing evidence (Ill. Rev. Stat., 1978 Supp., ch. 91½, par. 3—808; *Addington v. Texas* (1979), 441 U.S. 418, 433, 60 L. Ed. 2d 323, 99 S. Ct. 1804; *In re Stephenson* (1977), 67 Ill. 2d 544, 554-56, 367 N.E.2d 1273) the

State must show that either the mental illness might reasonably cause the respondent to inflict "serious physical harm upon himself or another in the near future; or * * * because of his illness [respondent would be] * * * unable to provide for his basic physical needs so as to guard himself from serious harm." (Ill. Rev. Stat., 1978 Supp., ch. 91½, par. 1—119.) In applying the aforesaid principles we have recognized that the medical science of predicting future dangerousness in an individual is inexact, and we have upheld a commitment where there was a reasonable expectation that the respondent would engage in dangerous conduct. (See *People v. Sansone* (1974), 18 Ill. App. 3d 315, 323, 309 N.E.2d 733.) Accordingly, judicial action need not be forestalled until someone is harmed. *In re Graham* (1976), 40 Ill. App. 3d 452, 454-55, 352 N.E.2d 387.

Respondent asserts that the evidence of his mental disorder was lacking. The unrebutted testimony of Dr. Gestautas establishes otherwise. This physician examined respondent and concluded that he was a paranoid schizophrenic. The record also establishes that respondent was operating under a delusion that a clothing manufacturer owed him an enormous sum of money for his work on a design book. We believe that the evidence adequately shows that respondent was suffering from a mental illness.

■ Further, respondent's delusion caused him to go to the manufacturer's place of business and to create an incident where he blocked an entrance. Obviously, should this again occur there existed the real possibility that respondent might be harmed by an irate employee at that location or respondent might harm someone there if he returned in order to obtain the money that he thought was owed him. There was ample evidence to justify the commitment order.

■■ Respondent also contends that allowing him to be called as an adverse witness violated his constitutional right against self-incrimination. However, it has been recognized that a respondent may not generally invoke such constitutional right in this form of proceeding (*People ex rel. Keith v. Keith* (1967), 38 Ill. 2d 405, 410, 231 N.E.2d 387; *In re Ciancanelli* (1975), 26 Ill. App. 3d 884, 887, 326 N.E.2d 47), unless such answers might subject him to criminal liability. In the present case respondent's counsel entered an objection to respondent testifying as an adverse witness based solely on his purported statutory rights and not premised on the constitution. Consequently, respondent has now waived any constitutional issue regarding the procedure. *Svenson v. Miller Builders, Inc.* (1979), 74 Ill. App. 3d 75, 87, 392 N.E.2d 628.

■ Respondent also cites the new Mental Health and Developmental Disabilities Code (Ill. Rev. Stat., 1978 Supp., ch. 91½, par. 1—100 *et seq.*) to support his position about being improperly called as an adverse witness. However, respondent is unable to point to any specific provision

in that new statute which expressly precludes such procedure. Thus we conclude that the use of the procedural device of calling respondent as an adverse witness was in accord with the Civil Practice Act and did not contravene the new mental health statute. Ill. Rev. Stat., 1978 Supp., ch. 91½, par. 6—100; Ill. Rev. Stat. 1977, ch. 110, par. 1.

For the reasons set forth above, we affirm the decision of the trial court.

Affirmed.

JOHNSON and ROMITI, JJ., concur.