*In re* EDWARD JOHNSTON—(The People of the State of Illinois, Petitioner-Appellee, *v.* Edward Johnston, Respondent-Appellant).

Third District   No. 3—83—0121

Opinion filed September 30, 1983.

STOUDER, P.J., dissenting.

Gary W. Klages, of Guardianship & Advocacy Commission, of Springfield, and Jeff Blesko, of Guardianship & Advocacy Commission, of Carbondale, for appellant.

Raymond G. Kimbell III, State's Attorney, of Galesburg (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE ALLOY delivered the opinion of the court:

In the cause before us, Edward Johnston was alleged to be a person subject to involuntary admission under the Illinois Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1979, ch. 91½, par. 3—400). In a bench trial, the respondent was found subject to admission and was committed to the Illinois Department of Mental Health and Developmental Disabilities for a period of 60 days. From this involuntary admission, the respondent appeals. The basic issue raised in this case is whether the trial court erred in finding the respondent was subject to involuntary admission.

On September 16, 1982, respondent Edward Johnston sought admission to the Galesburg Mental Health Center (Mental Health Center) as a voluntary patient pursuant to section 3—400 of the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1979, ch. 91½, par. 3—400). On January 18, 1983, respondent requested that he be discharged from the Mental Health Center pursuant to section 3—403 of the Mental Health and Developmental Disabilities Code. After six days, on January 24, 1983, the respondent attempted to leave the institution believing he had the right to do so. Subsequently, the Men-

tal Health Center sent workers to return respondent to the Mental Health Center. The respondent was returned to the Center with threats and physical force.

After the respondent was returned to the Mental Health Center, a petition for involuntary admission was filed by Deborah Dalton asserting that the respondent was mentally ill and, because of his illness, could reasonably be expected to injure himself or others or is unable to provide for his basic needs. The petition was accompanied by certificates of an unknown psychologist and Dr. Ma Paz Salamat Cristobal stating that the respondent was subject to involuntary admission. These certificates are dated January 25, 1983, the morning after the recapture incident.

At a hearing on February 4, 1983, at the Galesburg Mental Health Center before the judge, the respondent initially challenged the jurisdiction of the court on due process grounds but such challenge was overruled. The State then presented Dr. Cristobal, who testified that she had been respondent's attending psychiatrist since his admission and that she had seen the respondent two or three times a week.

Dr. Cristobal then testified to the symptoms of the illness she had observed. She stated that she witnessed the tendency of the respondent to get upset and frustrated easily. The doctor also testified to a conversation that occurred on January 25, 1983, the morning after Johnson's unauthorized absence and forced readmittance, at which time the doctor stated that she asked respondent where he was going and the respondent stated he was going to a friend's home, but he did not know the address. Dr. Cristobal testified that the respondent was very angry concerning the forced readmission and the force that was used by the Mental Health Center staff during the incident.

Dr. Cristobal, in discussing organic disabilities, stated that she noted that respondent was suffering from grand mal and petit mal seizures (the possible results of a head trauma at an early age). To control these seizures, the respondent is required to take anticonvulsive medication for the seizures. Based on Dr. Cristobal's observations, she diagnosed the respondent as having an organic personality syndrome type of mental illness. In response to questions concerning the likelihood that the respondent would inflict serious harm upon himself or another in the near future, the doctor stated that the respondent would be "quite likely to hurt others if he doesn't control himself." Dr. Cristobal also testified that respondent was unable to provide for his basic needs because he may at some time in the future refuse to take his seizure medication. The trial court, in denying a

motion for a directed finding, stated that the evidence as presented, and taken in the light most favorable to the non-moving party, had presented a *prima facie* case, *i.e.*, the State had shown that regardless of respondent's legal right not to take medication, the fact was that if he did not take the medication, he would suffer seizures. The court found that the evidence that respondent cannot take care of himself, coupled with evidence of the diagnosis of organic personality syndrome and the refusal to take necessary medication to control seizures, met the State's burden.

The trial court noted that Dr. Cristobal did testify that respondent lacked insight into the need for his medication and that the medication was needed to control his seizures. The court interpreted the doctor's comment on self-care to mean only that respondent was able to feed and clothe himself, and take care of his personal hygiene, but not to meet the needs of taking the four different medicines for his seizures.

When the respondent took the stand he testified that he suffered seizures which were with him since birth. Respondent stated that he had not failed to take his medication in the recent past and he had no intention of refusing medication in the future. On cross-examination, the respondent stated that he "blacks out" from seizures but denied injuring anyone by having a seizure.

The trial court, after the close of the evidence observed to respondent that the main problem is getting the seizures under control. The court noted that the respondent indicated that he would take his medicine, but also admitted that he had indicated to the doctor a few days previously that he was not going to take his medicine, or did not think he needed to.

The court stated specifically that "It is not the law that you are required—we are not talking about drugs to control your mind; we are talking about drugs that help to control your seizures." The court informed Johnston that it did not believe he was able to understand the necessity of medication and the appropriate dosages.

The court stated that, accordingly, it would find that the respondent was subject to involuntary admission and the court would sign the order that he be hospitalized. The court informed the respondent that the doctor would work with him and try to get him to take the right medicine in the right amounts and at the right times.

On appeal in this case, the appellant contends that the trial court erred in finding, by clear and convincing evidence that the respondent was unable to provide for his basic needs when it based its findings on speculation that the respondent may refuse to take his prescribed

medication and was uncertain of future living arrangements. The respondent does not contend he was mentally ill at the time of the hearing. The People properly contend that the evidence introduced at the hearing established, by clear and convincing evidence, that respondent was subject to involuntary admission.

The parties agree that an individual must be shown to be subject to involuntary admission by clear and convincing evidence. Clear and convincing evidence is stated to be something less than proof beyond a reasonable doubt. (*In re Stephenson* (1977), 67 Ill. 2d 544, 367 N.E.2d 1273.) In order to be subject to involuntary admission it need not be shown that the respondent is a definite danger to himself or society. (*In re Stephenson; In re Gregorovich* (1980), 89 Ill. App. 3d 528, 411 N.E.2d 981.) The People assert that the courts accordingly are not required to wait until someone is harmed before ordering hospitalization for the person who might cause such harm. *In re Haber* (1979), 78 Ill. App. 3d 1120, 1123, 398 N.E.2d 121, 123.

On appeal, the trial court's determination will not be reversed unless it is manifestly erroneous. It should also be noted that in civil commitment cases, the medical science of predicting the future is inexact, so that a reviewing court will normally uphold a commitment order where there is a reasonable expectation that the respondent might engage in dangerous conduct. *In re Powell* (1980), 85 Ill. App. 3d 877, 880, 407 N.E.2d 658, 660.

It is clear that the trial court in this case did not abuse its discretion in determining that the respondent was subject to involuntary admission. Dr. Cristobal had been the attending treating physician since the respondent had voluntarily admitted himself to the Mental Health Center on September 16, 1982. As we had noted previously, the testimony of Dr. Cristobal indicated that the respondent is easily frustrated and gets loud and verbally hostile. The doctor stated that respondent had attempted to sign out of the Mental Health facility even though he had no plans for himself and that when asked where he was going he stated that he was going to visit a friend in Silvis. The doctor determined that the respondent did not know the address of his friend nor had he communicated with his friend.

Moreover, it was also shown that the respondent did not have his medications with him when he left the Mental Health Center. When he was asked about this, respondent replied that he did not need his medications. According to the doctor, the respondent needs the medications to control his seizures and that he was required to take four types of anticonvulsant medications for his seizures. The doctor said that the respondent was suffering from limited insight and impaired

judgment because he did not believe he needed medication for his convulsions. The doctor testified also that respondent still had seizures and that his condition was uncontrolled and that respondent believed he could manage without medication.

As noted, the defendant was suffering from organic personality syndrome and borderline intellectual function, according to the doctor. The doctor based her diagnosis on the respondent's temper outbursts, his inability to control his aggressive tendencies and his low threshold of frustration. The doctor was asked whether the respondent was likely to inflict serious harm upon himself or other people in the near future. The doctor stated that while the respondent's primary problem was an inability to care for himself, he could also be a danger to others because he is easily provoked or agitated. The doctor also stated that the respondent was quite likely to hurt others if he did not control himself, and the medication was necessary for him to remain under his own control.

When the respondent testified on his own behalf, on direct examination, he confirmed that he still suffered from seizures from time to time. When he was asked what caused his seizures, the respondent answered, "When the sun hits my head, when I am out walking, I just go into one, because when it gets up too high, too hot out there, I go into a seizure." Respondent was also asked on direct examination if there were times when he failed to take his medicine when he was outside of the Mental Health Center. He admitted he had failed to take the medication a "long time back" and had twice overdosed his anticonvulsant medication. He was also asked if he intentionally overdosed, and the respondent answered, "I just was mad at the time, I just done that." Respondent also stated that during his seizures, he "cracked" his head "wide open." The State contends it is clear from the record that respondent is suffering from a mental illness which makes him dangerous to himself and others. The respondent's inability to control himself, stemming from any failure to take his required medication, would present a clear and present danger to others if he was then released from the Mental Health Center.

In the instant case, the psychiatrist testified that the respondent had specifically told the doctor that he did not need his medication and, also, on a prior occasion when he failed to take his medication he injured himself. He admitted overdosing on two occasions and the People, therefore, contend that the trial judge was not manifestly erroneous in determining that the respondent was subject to involuntary commitment because he was unable to provide for his basic needs and was reasonably expected to inflict serious harm upon himself or

another in the near future if he did not take his medication.

■ We are aware of the fact that in *Jackson v. Indiana* (1972), 406 U.S. 715, 32 L. Ed. 2d 435, 92 S. Ct. 1845, the court held that an individual found to be incompetent to stand trial, could not be indefinitely committed to a mental hospital, but only can be held for a reasonable period of time to determine if there exists a substantial probability that he will attain such capacity in the foreseeable future. The same condition would apply with reference to the respondent here. The respondent may make progress under medical care and qualify for early release. The trial court's order of admission simply covers the 60-day period.

For the reasons stated on the basis of the record, the order of the trial judge is affirmed.

Affirmed.

BARRY, J., concurs.

PRESIDING JUSTICE STOUDER, dissenting:

I do not believe that sufficient evidence was presented at the hearing to justify the respondent's involuntary admission under the Illinois Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1981, ch. 91½, par. 3—400).

An individual is subject to involuntary admission if he is reasonably expected to inflict serious harm upon himself or another in the near future; or if he is unable to provide for his basic physical needs so as to avoid seriously harming himself. (Ill. Rev. Stat. 1981, ch. 91½, par. 1—119.) The standard of proof is one of clear and convincing evidence. Ill. Rev. Stat. 1981, ch. 91½, par. 3—808; *In re Stephenson* (1977), 67 Ill. 2d 544, 367 N.E.2d 1273.

The evidence presented by the State simply did not justify the requisite findings for involuntary admission under the Mental Health Code. No evidence was presented of specific instances where the respondent had refused to take his prescribed medicine. Dr. Cristobal's testimony that the respondent's failure in the future to take his medicine could result in injury to himself or others was speculative. In fact, the respondent testified that he had not failed to take his medicine in the recent past and that he had no intention of not taking his medication in the future.

Speculation that an individual might not take prescribed medication which could result in his harming himself or others does not satisfy the standard which requires the State to prove its case of invol-

untary admission by clear and convincing evidence. Evidence of specific instances in which the individual has failed to cooperate medically must be presented before the clear and convincing standard is met. *People v. Nunn* (1982), 108 Ill. App. 3d 169, 438 N.E.2d 1342; *In re Fields* (1978), 60 Ill. App. 3d 869, 377 N.E.2d 301.

Evidence of a statement made by the respondent during his forced readmittance to the Mental Health Center indicating that he felt no need to take his medication was not a specific instance of his failure to take prescribed medication. Thus, there being only evidence of a speculative nature, the State did not prove the respondent's need for hospitalization by clear and convincing evidence.

The majority does not address itself to the remaining basis of the trial court decision, namely, that the respondent was unable to provide for his basic needs because he was uncertain of his future living arrangements. In clarifying this particular issue, I would add that this type of evidence does not in any way contribute to support the trial court's determination of the need for hospitalizing the respondent.

Therefore, for the reasons set forth above, I would reverse the decision of the trial court.