THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. DONALD LANG, Respondent-Appellant.

First District (2nd Division)   Nos. 1—86—0702, 1—86—2532, 1—87—1555 cons.

Opinion filed September 26, 1989.

Randolph N. Stone, Public Defender, of Chicago (Donald Paull, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE BILANDIC delivered the opinion of the court:

This consolidated appeal involves the tenth (No. 86—0702), eleventh (No. 86—2532), and twelfth (No. 87—1555) consecutive civil commitment hearings on respondent, Donald Lang, pursuant to the Mental Health and Developmental Disabilities Code (hereinafter the Code) (Ill. Rev. Stat. 1985, ch. 91½, par. 1—100, *et seq.*). The commitment orders from the three hearings involved in this appeal have expired and are no longer in effect.

While this appeal was pending, four additional civil commitment hearings, the thirteenth, fourteenth, fifteenth and sixteenth consecutive hearings, were held in accordance with the periodic review provision of the Code. (Ill. Rev. Stat. 1985, ch. 91½, par. 3—813.) In each instance, the circuit court entered an order determining that the respondent was subject to involuntary admission under section 1—119 of the Code. These orders are not involved in this appeal.

The commitment orders in hearings three through nine were affirmed by the Illinois Supreme Court. *People v. Lang* (1986), 113 Ill. 2d 407, 498 N.E.2d 1105.

In order to place this appeal in proper perspective, we will summarize the history of the prior litigation which causes this matter to regularly appear on the court calendar.

In 1965, respondent was indicted for the murder of a woman in Chicago, Illinois. Defendant who was and is an illiterate deaf mute unable to cooperate with counsel, was found incompetent to stand trial. A trial was never held for this murder because of respondent's condition and also because the State's main witness died.

In 1971, respondent was arrested and charged with the murder of a second woman under circumstances similar to the first murder. He was tried and convicted on evidence which was largely uncontested. This court reversed the conviction based on the fact that respondent was unable to communicate with counsel. (*People v. Lang* (1975), 26 Ill. App. 3d 648, 325 N.E.2d 305, *cert. denied* (1976), 423 U.S. 1079, 47 L. Ed. 2d 90, 96 S. Ct. 866.) In March 1976, respondent was found unfit to stand trial for this second murder.

In December 1976, the trial court found that respondent was not a person in need of mental treatment and set bail for him. However, respondent was never released but spent the next several years either in the Cook County jail or in the Illinois State Psychiatric Institute. In 1979, our supreme court reversed the trial court's finding and ruled that there was sufficient evidence to support an involuntary admission to the Department of Mental Health and Developmental Disabilities.

In March 1981, the trial court again found respondent unfit to stand trial and also found that he was unlikely to become fit within a year. As required by statute, the trial court dismissed the murder charge with leave to reinstate. The circuit court then obtained jurisdiction to conduct the first civil commitment hearing at which respondent was found to be subject to involuntary commitment.

■■ Meanwhile, in 1986, the Illinois Supreme Court ruled that, even though the murder charges had been dismissed and never reinstated, respondent was entitled to another fitness hearing and also to a discharge hearing if he was again found to be unfit. (*People v. Lang* (1986), 113 Ill. 2d 407, 498 N.E.2d 1105.) A discharge hearing is like a criminal trial in that an unfit defendant may be acquitted outright or acquitted on grounds of insanity of a criminal charge, but is unlike a criminal trial in that a conviction may not be entered. (Ill. Rev. Stat. 1985, ch. 38, par. 104—25.) At a discharge hearing, the State has the burden to prove the defendant guilty of the offense beyond a reasonable doubt. Ill. Rev. Stat. 1985, ch. 38, par. 104—25(b).

On March 31, 1987, the trial court found respondent unfit to stand trial. On May 7, 1987, the court found that the State had proved respondent guilty beyond a reasonable doubt of the second murder and thus ruled against respondent at the discharge hearing. On June 4, 1987, the court ruled that under section 104—28(a) of the Code of Criminal Procedure of 1963, respondent was no longer subject to criminal court jurisdiction, and further ruled that respondent could be committed to the Department of Mental Health only in a civil court. (Ill. Rev. Stat. 1985, ch. 38, par. 104—28(a).) The order dismissing the murder charges with leave to reinstate remains in effect.

Since that time, respondent has had 16 civil commitment hearings. At each hearing, the trial court has found that respondent is a person subject to involuntary admission.

The duration of an order of involuntary admission cannot exceed 180 days. (Ill. Rev. Stat. 1985, ch. 91½, par. 3—813.) The ninth consecutive commitment order is alleged to have expired prior to the filing of the tenth consecutive petition for involuntary commitment. Therefore, respondent contends that the tenth consecutive hearing on civil commitment (No. 86—702) was improper for lack of jurisdiction. Citing *In re Plank* (1988), 169 Ill. App. 3d 411, 523 N.E.2d 614, respondent argues that failure to comply with this statutory provision renders the judgment ineffective and requires his release.

Respondent further contends that: "It follows logically, as well, that the eleventh and twelfth consecutive hearings are nullities."

It is undisputed that an initial order for hospitalization shall not

exceed 60 days and that "[a]ddditional 180 day periods of treatment may be sought *** so long as the patient continues to be subject to involuntary admission." (Ill. Rev. Stat. 1985, ch. 91½, par. 3—813(b).) Our supreme court has affirmed all orders of involuntary admission in this case from the initial petition through the ninth consecutive involuntary admission order.

I

The question presented is whether the filing of the tenth consecutive petition one day late (on the 181st day after the ninth order) renders the tenth, eleventh and twelfth orders void and requires respondent's release.

Respondent concedes that the untimely filing of the tenth petition does not permanently deprive the trial court of jurisdiction. In his reply brief, respondent "agrees that a new petition and certificates could have been filed at any time later *** which with sufficient evidence, might have led to the commitment of Mr. Lang for a maximum of *60 days* pursuant to section 3—813(a)."

■ "The goals of civil commitment laws (involuntary admission) are to provide care and treatment to mentally ill persons who are unable to care for themselves, and to protect society from the dangerous mentally ill." (*People v. Lang* (1986), 113 Ill. 2d 407, 440, 498 N.E.2d 1105.) "Because of the 'uniqueness' of this case and the 'nature and complexity' of the legal issues involved, this court over the past 20 years has been forced on occasion to follow its own wisdom and good conscience in fashioning solutions which will adequately protect this respondent's rights and further society's substantial interests in justice and safety." 113 Ill. 2d at 447-48.

This prophetic statement of our supreme court persuades us to look to the substance of the issue presented. Section 3—813(b) of the Code provides that "[t]he provisions of this chapter which apply whenever an *initial* order is sought shall apply whenever an *additional* period of treatment is sought." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 91½, par. 3—813(b).

■ We therefore conclude that, under the circumstances of this case, it is insignificant whether what is labeled the tenth consecutive petition is treated as an *initial* petition or as an *additional* petition. *The same substantive evidence must be presented to sustain an involuntary hospitalization,* whether it be for 60 days or 180 days. We hold that the trial court had jurisdiction to consider the tenth, eleventh and twelfth petitions and carry out the goals of involuntary admission, namely, to provide treatment for persons in need of treatment and to

protect society.

Before considering whether the evidence presented at the tenth, eleventh and twelfth hearings was sufficient to support the orders of involuntary admission, we note that there have been four additional hearings (thirteenth, fourteenth, fifteenth and sixteenth). As noted by our supreme court in *People v. Lang* (1986), 113 Ill. 2d 407, 471-72, 498 N.E.2d 1105:

> "Finally, we suggest that the consolidation of appeals from separate commitment orders involving the same respondent should be avoided whenever possible. Because a redetermination of a patient's involuntary-admission status must be made periodically [citation], appeals from such orders should be handled expeditiously in order to insure that the patient is not deprived of meaningful appellate review. We sympathize with the appellate court's dilemma in this case and realize that the decision to consolidate these appeals was made 'in the interest of expediting a final disposition of this protracted matter.' [Citation.] The record shows that much of the delay in prosecuting these appeals was attributed to respondent's attorneys, who asked for several extensions of time in which to file briefs. The record also shows that appellate cause No. 82—429 was dismissed by the appellate court because respondent's attorneys failed to file the docketing statement and record in compliance with a rule to show cause issued on October 28, 1982, and that cause No. 84—2837 was dismissed on January 16, 1986, for want of prosecution. Both cases were reinstated by the appellate court on respondent's motions. In addition, we believe that respondent was not prejudiced by any delay occasioned by the consolidation of these appeals, since we affirmed the orders for involuntary admission. In the future, however, separate orders for involuntary admission should not be consolidated. Instead, whenever possible, appeals from each order should be reviewed on a separate and expeditious basis."

It is obvious that the review of all orders since our supreme court spoke in *Lang* has not and cannot be "reviewed on a separate and expeditious basis."

Respondent next contends that he was not proved by clear and convincing evidence to be a danger to himself or others or that he was unable to care for himself. Ill. Rev. Stat. 1985, ch. 91½, par. 1—119; *In re Stephenson* (1977), 67 Ill. 2d 544, 367 N.E.2d 1273.

In the 1986 opinion in this case, the Illinois Supreme Court stated:

> "A 'mentally ill' person for purposes of section 1—119 is an indi-

vidual with an organic, mental or emotional disorder which substantially impairs the person's thought, perception or reality, emotional process, judgment, behavior, or ability to cope with the ordinary demands of life." *Lang*, 113 Ill. 2d at 453.

At all the commitment hearings on appeal, experts testified that respondent's mental condition left him unable to care for himself. Expert testimony also revealed that respondent was a danger to himself and to others. No expert ever testified that respondent was capable of being released. There was testimony that respondent has repeatedly had aggressive encounters with hospital personnel; that he needs medication to prevent blindness and is unable to medicate himself; and that respondent fits into the diagnostic categories in the *Diagnostic and Statistical Manual of Mental Disorders* (Wash. D.C., American Psychiatric Association (3d ed. 1980)).

Dr. Donaghue, who had the closest relationship with the respondent, testified as an expert witness for respondent. It was his opinion that respondent should remain at the Chicago Read Mental Health Center because he was unable to care for himself.

■ The decision of the trial court to commit a person to a mental hospital will be affirmed on appeal unless it is manifestly erroneous. (*In re Rogers* (1985), 133 Ill. App. 3d 524, 478 N.E.2d 1198; *In re Johnston* (1983), 118 Ill. App. 3d 214, 454 N.E.2d 840.) In recommitment proceedings, unanimous and uncontradicted expert testimony that a patient would be dangerous if released justifies continued involuntary hospitalization. *In re Williams* (1986), 140 Ill. App. 3d 708, 489 N.E.2d 347.

■ Further support for affirming the trial court's judgment is found in *People v. Lang* (1986), 113 Ill. 2d 407, 498 N.E.2d 1105. Although not *res judicata* because each successive commitment hearing is a *de novo* proceeding, the Illinois Supreme Court found that respondent was mentally ill and dangerous to himself and others. In *Lang*, the court considered much of the same evidence and many of the same witnesses as are involved in this appeal. Thus, *Lang* provides support for upholding the commitment orders in the instant appeals.

After reviewing the record, we conclude that the orders of the trial court are supported by the evidence and that the respondent was properly admitted for treatment under the statute.

II

■ Respondent further argues that this court should order him placed in some less restrictive facility. Section 3—811 states:

"If any person is found subject to involuntary admission, the

court shall consider alternative mental health facilities which are appropriate for and available to the respondent ***. *** The court shall order the least restrictive alternative for treatment which is appropriate." Ill. Rev. Stat. 1985, ch. 91½, par. 3—811.

There is no evidence in the record to support respondent's request. The experts all testified that respondent should remain at Chicago Read. Donaghue also testified that he should remain at Read, although he did state that respondent may begin one day a week at a halfway house. Others also testified that a halfway house would be inappropriate at this time for respondent because of his incapability and/or refusal to medicate himself. Further, there was evidence that respondent was under 24-hour security, which is unavailable at a halfway house. Finally, there is no evidence that any halfway house was available to him or accepted him.

The trial court found respondent in need of hospitalization at Chicago Read. Thus, it implicitly considered less restrictive alternatives and rejected them. In light of the evidence, the court did not err in this judgment.

### III

■ Respondent also contends that he was denied due process because the court ordered him to provide the State and counsel for the guardian with a copy of a report prepared by Dr. Donaghue, respondent's expert witness at the tenth hearing. Our review of the record supports the ruling of the trial court.

Also, respondent's argument that he was restricted in the scope of cross-examination, so as to amount to a denial of due process, is misplaced. The court found that the examinations were abusive, irrelevant and outside the scope of the direct. Because a court is given wide latitude in controlling the trial, its rulings regarding cross-examinations should be disturbed by a reviewing court only in the case of clear abuse of discretion. (See *People v. Kline* (1982), 92 Ill. 2d 490, 442 N.E.2d 154.) Accordingly, we find that respondent was not denied due process by virtue of the trial court properly restricting his cross-examinations of two State witnesses.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

HARTMAN and SCARIANO, JJ., concur.