*In re* SANDRA E. KNAPP, a Person Found Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Sandra E. Knapp, Respondent-Appellant).

Fourth District   No. 4—91—0840

Opinion filed June 25, 1992.

William D. Reid, of Elmore & Reid, of Springfield, for appellant.

Donald M. Cadagin, State's Attorney, of Springfield (Norbert J. Goetten, Robert J. Biderman, and Rebecca L. White, all' of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Sandra Knapp, respondent, appeals from a judgment of the circuit court of Sangamon County finding her to be a person subject to involuntary admission and ordering her to be hospitalized with the Illinois Department of Mental Health and Developmental Disabilities. The only issue raised on appeal is whether the decision of the trial court is against the manifest weight of the evidence. We affirm.

The petition for involuntary admission filed October 22, 1991, alleged respondent was a person who was mentally ill, who because of her illness was reasonably expected to inflict serious physical harm on

herself or another in the near future, and who was in need of immediate hospitalization to prevent such harm. At the hearing, three witnesses testified: Betty Boyle, a psychologist employed at the Andrew McFarland Zone Center; Francis Glaser, respondent's mother; and respondent. Boyle testified she examined respondent on October 24, 1991, for the purpose of making the certificate with regard to the involuntary commitment proceeding. Boyle found respondent to be highly delusional about her mother, feeling her mother was the root of all her problems. It had been reported that respondent told a friend she did not have a gun because she might kill her mother. Respondent did not deny making that statement. Respondent also indicated her mother had been harassing her for months.

According to Boyle, respondent has the delusion she has a life-threatening disease known as lupus erythematosus. Recently, respondent has been seeing a Dr. Vales, but she has seen a number of doctors. Respondent fires them when they suggest she needs psychiatric care and refuses to take antidepressants. It was Boyle's opinion that because of the delusions, respondent was reasonably expected to inflict serious physical harm on herself or another in the near future. Boyle was particularly concerned about the danger to respondent's mother and stepfather.

In addition, respondent became delusional about a neighbor of her parents. She looked his name up in the telephone book and began sending him love letters and tried to telephone him. The delusion persisted even though the man did not know her and the sheriff came to respondent's mother's house to explain that, if respondent's activities persisted, the man's wife would swear out a complaint. According to Boyle, hospitalization was the least restrictive form of treatment available for respondent.

Admitted into evidence without objection were a number of exhibits. Among those exhibits was an October 30, 1991, letter from Dr. James S. Vales stating respondent was in possession of an erroneous letter stating he diagnosed her to have systemic lupus, explaining that, after evaluation by Vales and two nephrologists, it was determined she did not have systemic lupus and further explaining that respondent refused the recommended psychiatric evaluation. A handwritten note from Vales dated October 23, 1991, stated he interviewed respondent on September 19, 1991. In the note, Vales stated respondent admitted to him that she had stated she would kill her mother if she had a gun and she further stated that she could do that. In addition, there were copies of letters respondent sent to J.K., the gentleman who was the target of her affections. In those letters,

respondent stated that she was abused and harassed by her mother and stepfather, her telephone was bugged by her ex-husband and the Governor of Wisconsin, and various other unidentified individuals were playing tricks on her and harassing her.

Respondent's mother examined the letters sent to J.K. She testified she recognized the handwriting and signature on the letters as being respondent's.

Respondent testified that her mother had been harassing her. "She is not the root of all my problems, she is the root of why I stated that if I had a gun, I would kill her." Respondent explained she was not capable of shooting her mother, but she harbors a lot of anger toward her. She is not a violent person. It was just an expression of anger, not a threat. Respondent does not own a gun, and had no intention of ever buying one. She has never harmed herself or anyone else. Respondent testified she had systemic lupus erythematosus and offered into evidence the July 22, 1991, letter of Vales which stated she is disabled as a result of that disease. She explained she sent the letters to J.K. by mistake. She thought she was sending them to someone else, a person she had met two years before and whom J.K. resembled. Respondent stated she sent him and his family an apology. Respondent also testified Vales had been treating her for lupus with steroids since the first of March, but now he states she does not have the disease.

■■■ While it is true that the State's burden of proof in the trial court in cases involving commitment of persons for mental treatment is to prove the basis for involuntary admission by clear and convincing evidence (*In re Stephenson* (1977), 67 Ill. 2d 544, 556, 367 N.E.2d 1273, 1278), the standard of review is whether the judgment is against the manifest weight of the evidence. This is similar to cases involving termination of parental rights. (*In re L.M.* (1990), 205 Ill. App. 3d 497, 513-14, 563 N.E.2d 999, 1009; *In re R.B.W.* (1989), 192 Ill. App. 3d 477, 499-500, 548 N.E.2d 1085, 1099-1100.) The decision of the trial court is against the manifest weight of the evidence if a review of the record clearly establishes that the decision opposite to the one reached by the trial court was the proper result. (*Stone v. City of Arcola* (1989), 181 Ill. App. 3d 513, 530-31, 536 N.E.2d 1329, 1340.) Great deference is given to the trial court's findings since that court had the opportunity to see the respondent and witnesses and hear them testify and, therefore, is in a much superior position to determine credibility and weigh the evidence. (*In re Biggs* (1991), 219 Ill. App. 3d 361, 363, 579 N.E.2d 1170, 1172.) A reviewing court will not set aside a trial court's decision simply because it would have

ruled differently on the evidence. (*In re Rogers* (1985), 133 Ill. App. 3d 524, 525, 478 N.E.2d 1198, 1199.) It has long been recognized that predicting the future dangerousness of an individual is an inexact medical science, and therefore, reviewing courts have held that orders of commitment will not be overturned when there is "a reasonable expectation that the respondent would engage in dangerous conduct." (*In re Powell* (1980), 85 Ill. App. 3d 877, 880, 407 N.E.2d 658, 660.) Courts are not required to wait until an individual is harmed by the respondent before ordering hospitalization. *In re Johnston* (1983), 118 Ill. App. 3d 214, 218, 454 N.E.2d 840, 842; *Powell*, 85 Ill. App. 3d at 880, 407 N.E.2d at 660.

Based on the evidence, the decision of the trial court was not against the manifest weight of the evidence. Accordingly, the judgment of the circuit court of Sangamon County is affirmed.

Affirmed.

COOK and LUND, JJ., concur.