No. 3--96--0487

_________________________________________________________________

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              THIRD DISTRICT

                                   

IN THE MATTER OF DENISE BONTRAGER  )    Appeal from the Circuit

(PEOPLE OF THE STATE OF ILLINOIS)  )    Court of the 10th

                                   )    Judicial Circuit,

          Petitioner-Appellee,     )    Peoria County, Illinois

                                   )

     v.                            )    No. 96-MH-125

                                   )

DENISE BONTRAGER,                  )    Honorable                

                                   )    E. Michael O'Brien

          Respondent-Appellant.    )    Judge, Presiding

_________________________________________________________________

                                OPINION   

________________________________________________________________

     Respondent, Denise Bontrager, appeals from orders of the

circuit court of Peoria County, which found her subject to

involuntary admission into Zeller Mental Health Center (Zeller)

for 60 days, and subject to involuntary administration of

psychotropic drugs for a period not to exceed 90 days.  For the

following reasons, we reverse.

                                   FACTS

     The limited record in this case reveals that respondent

obtained a college degree, and at one point, was employed and

living with her husband in Ohio.  Since approximately 1991,

respondent has been employed, on and off, has moved often, and

her marital status is uncertain.

     Respondent spent the last week of April 1996 living with her

sister in Spring Valley, Illinois.  That living arrangement ended

sometime after a spanking incident involving respondent's nine

year old niece, for which the police were called.

     On May 2, 1996, a petition for respondent's involuntary

admission was filed pursuant to section 119 of the Mental Health

and Developmental Disabilities Code (the Code).  405 ILCS 5/1-119

(West 1992).  The petition asserted respondent was mentally ill

and unable to provide for her basic physical needs so as to guard

herself from serious harm.  This assertion was based on

respondent's reports of hearing voices, referring to herself in

the third person, failing to eat for three months because she

believed unnamed persons removed her internal organs and blood,

fearing herself because she told the truth, and spitting

frequently because she would not swallow her saliva.

     A certificate by licensed clinical social worker and

qualified examiner, David Schwarz (Schwarz), accompanied the

petition.  Schwarz certified that respondent's irrational fears

and loss of touch with reality proved she could not be depended

on to care for herself.

     On May 3, 1996, respondent was hospitalized at Zeller on an

emergency basis with petition and certificate.  Also that day, a

petition for administration of psychotropic drugs was filed

pursuant to section 107.1(d) of the Code.  405 ILCS 5/2-

107.1(d)(West 1992).  A certificate by respondent's treating

psychiatrist at Zeller, Dr. Jayalakshmi Attaluri, accompanied the

petition and certified, inter alia, that respondent was mentally

ill, evidenced by her deteriorating behavior, repeated episodic

occurrences, and preoccupation with her problems.

     At a May 8, 1996, hearing on both petitions, Dr. Attaluri

testified to the allegations set forth in the petition and the

certificate, and opined that respondent's condition had existed

prior to her admission to Zeller.  She recommended that

respondent be committed to Zeller for 60 days, and that a

neuroleptic psychotropic drug such as Prolixin or Haldol be

administered.  Dr. Attaluri believed that respondent lacked the

capacity to reasonably decide to take medication, and that the

use of such psychotropic drugs would benefit respondent, with any

possible harm or side effects being outweighed by the benefits.

     Respondent testified and denied any psychiatric problems.

She only demanded medical treatment for her missing organs, and

requested legal assistance.  She asked to be released to the

Guardianship and Advocacy Commission, and also asked to be

discharged, stating that she could return home, which could be

Peoria, but which had been Spring Valley.  She also voiced an

interest in contacting Catholic Social Services and living in one

of their facilities.

     Respondent stated that until approximately ten days prior to

the hearing, she had lived independently, and paid her expenses. 

She maintained that she was last employed in late 1994 early

1995, however, she stated that she had received unemployment

compensation on and off since 1991.  She denied that she would

harm herself or anyone, and if allowed to be released, she could

care for herself, needing only transportation.

     The court found clear and convincing evidence of

respondent's mental illness, her refusal of medication, and her

deteriorating condition.  The court determined respondent lacked

the capacity to make a reasoned decision about medication, and

that the benefits of psychotropic drugs would outweigh any harm,

which could be guarded against.  Finding other less restrictive

services inappropriate, the court ordered respondent

involuntarily committed for 60 days, and authorized the

administration of psychotropic drugs not to exceed 90 days. 

Respondent appeals the court's orders.

                        I. INVOLUNTARY COMMITMENT.

     Pursuant to the section 119 of the Code, respondent is

subject to involuntary admission if, due to a mental illness, she

is reasonably expected to inflict serious physical harm upon

herself or another in the near future, or is unable to care for

her basic needs so as to guard herself from serious harm.  405

ILCS 5/1-119 (West 1992).

     The elements of section 119 must be proved by clear and

convincing evidence, which requires a high level of certainty

before finding one in need of mental treatment and curtailing

one's liberty, but it is something less than proof beyond a

reasonable doubt.  In re Stephenson, 67 Ill. 2d 544 (1977); In re

Johnston, 118 Ill. App. 3d 214 (1983); Bazydlo v. Volant, 164

Ill. 2d 207 (1995).

     As a reviewing court, we give great deference to a circuit

court's factual findings, as it stands in the best position to

weigh witness credibility, and its decision will not be disturbed

unless it is manifestly erroneous.  In re Jeffers, 239 Ill. App.

3d 29, 35 (1992).  However, we emphasize that in order to uphold

a court's order, appropriate findings, based on nothing less than

clear and convincing evidence, must be made.

     After careful review of the record, we find that the court's

decision to involuntarily commit respondent was manifestly

erroneous.  First, we find that the People failed to prove by

clear and convincing evidence that respondent was unable to care

for her basic physical needs.  Dr. Attaluri testified that she

could "not really say whether she [respondent] can prepare her

own meals or whether she was doing it or not."  Dr. Attaluri

acknowledged that she had limited information about respondent,

noting that she "did not have a chance to talk to anybody [family

or friends, concerning respondent] ***."  She further

acknowledged her inability to determine if respondent attached

any importance to providing for her own needs.

     Under these circumstances, we find that Dr. Attaluri's

comments did not constitute clear and convincing evidence that

established a high level of certainty that respondent was unable

to care for her basic physical needs.  We note that respondent

had a plan if discharged, with three possible living arrangements

and persons to contact.  In addition, she showed some

understanding of money, considering she claimed that she had

lived independently and received unemployment compensation.

     Next, we find that the People failed to prove by clear and

convincing evidence that respondent would seriously harm herself. 

The record makes no mention of respondent being loud,

threatening, or disruptive.  Although one spanking incident

involving respondent's niece was mentioned, the record is devoid

of information concerning the severity of this incident, and

there was no other evidence of past or projected serious harm to

herself or to anyone else presented.

     In fact, when asked on direct examination whether respondent

may harm someone else or herself, Dr. Attaluri stated that "there

is a potential," however, on re-cross examination she stated that

respondent may harm, "somebody else, not herself. She's not

suicidal, no."  Although the court does not have to wait until

respondent harms herself to commit her, (In re Manis, 213 Ill

App. 3d 1075 (3d Dist. 1991)), Dr. Attaluri's opinion of a

"potential" for harm, followed by a statement that respondent

would not harm herself, falls short of being clear and convincing

evidence, and is speculative at best.

     Lastly, although respondent maintains that she was never

notified of the People's attempt to involuntarily commit her

based on "dangerous propensities," the record indicates

respondent was personally served with notice on May 7, 1996.

           II. INVOLUNTARY ADMINISTRATION OF PSYCHOTROPIC DRUGS.

     Section 107.1(d) of the Code requires that the following

factors be proved by clear and convincing evidence before

psychotropic drugs can be administered to a recipient:

     "(1) That the recipient has a serious mental illness or

developmental disability.

     (2) That because of said mental illness *** recipient

exhibits deterioration of his ability to function, suffering, or

threatening or disruptive behavior.

     (3) That the illness *** has existed for a period marked by

the continuing presence of the symptoms *** or the repeated

episodic occurrences of these symptoms.

     (4) That the benefits of the psychotropic medication will

outweigh the harm.

     (5) That the recipient lacks the capacity to make a reasoned

decision about the medication.

     (6) That other less restrictive services have been explored

and found inappropriate." 405 ILCS 5/2-107.1(d)(West 1992).

     Although Dr. Attaluri considered respondent seriously

mentally ill, she acknowledged that she was unable to diagnose

her condition due to a lack of information.

     Dr. Attaluri certified that respondent had become agitated

and physically aggressive, however, she failed to specify how.  

Dr. Attaluri believed that respondent's mental illness affected

her relationships and her ability to function, in part, because

she went from a college educated, employed, married woman, to one

who is unemployed, moves from place to place, and will not

comment on her marital status.  We do not consider these

characteristics to constitute a clear and convincing showing of

respondent's deteriorating ability to function.  Further, when

asked, Dr. Attaluri admitted that she had "no idea if she

[respondent] can manage herself in this women's shelter ***."

     Dr. Attaluri stated that respondent's illness has existed

for a period marked by the continuing presence of her symptoms,

i. e. respondent is psychotic, delusional, and paranoid that

people are stealing things from her.  However, Dr. Attaluri

acknowledged that respondent "doesn't say directly that she's

hearing voices, all she says is all I can say is I have an ear

problem ***." 

     Although Dr. Attaluri indicated that the benefits of

psychotropic drugs would outweigh any harm, she failed to state

why the drugs were necessary, what the benefits were, or what

potential side affects existed.

     Dr. Attaluri opined that respondent was incapable of making

a reasoned decision concerning medication due to her delusions

and denial of psychiatric problems.  However, it is uncertain

from the record whether she discussed or reviewed written

explanations of benefits/side effects with respondent, as

required by section 102 of the Code, (405 ILCS 5/2-102 (West

1992)), and if so, whether respondent failed to understand her

options.  Further, no one stated why respondent consistently

refused the drugs.  In re Carmody, 274 Ill. App. 3d 46, 52-3

(1995)(a mentally ill person subject to involuntary commitment

retains a constitutional right to refuse psychotropic drugs.)

     Lastly, there was no evidence submitted as to what least

restrictive services were explored and found inappropriate.

     Under these circumstances, the People failed to prove the

elements of section 107.1(d) by clear and convincing evidence. 

Therefore, we find that the court erred by ordering respondent

subject to the administration of psychotropic drugs.

     Based upon the foregoing, the orders of the circuit court of

Peoria County subjecting respondent to involuntary commitment for

60 days, and involuntary administration of psychotropic drugs not

to exceed 90 days, are reversed.

     Reversed.

     HOLDRIDGE, P.J., with McCUSKEY and SLATER, J.J., concurring.